### BUIST v. BRYAN.[1]

1. B. & L. ASSOCIATION—BORROWER—RECEIVER.—Where a member of a building and loan association borrows money and gives his bond, conditioned to pay his stock dues and interest every month until the association shall wind up, and secures such bond by a mortgage of land and an assignment of his certificate of stock, and the association is afterwards put into the hands of a receiver, the contract of the borrower as originally contemplated is thereby terminated, and such borrower is no longer liable for monthly dues.

2. IBID.—IBID.—IBID.—PAYMENTS.—All former payments of monthly dues and interest should be credited on the mortgage debt, and if they are sufficient, at the contract rate of interest, to extinguish the debt, a complaint for foreclosure cannot be sustained; but if insufficient, the payments of dues and interest must be applied as credits on the bond.

3. PETITION FOR REHEARING refused.

Before ALDRICH, J., Charleston, March, 1893.

This was an action by G. L. Buist, as receiver of the Assistance Building and Loan Association, against Daniel Bryan. The complaint was as follows:

1. That heretofore, to wit: on or about the 9th day of September, 1892, in a certain cause depending in the Court of Common Pleas for Charleston County, said State, entitled, "E. M. Moreland *v.* Assistance Building and Loan Association," the plaintiff, George Lamb Buist, was duly appointed receiver of the said Assistance Building and Loan Association, and by said court authorized and empowered to take charge of all and singular the assets of said corporation, and to bring all actions of any kind and description necessary for winding up the affairs of said association, and protecting the interests of the stockholders thereof. That the said George Lamb Buist duly entered upon the discharge of his duty as such receiver, having qualified as required by said order, and ever since has been, and is now, the duly appointed receiver of said Assistance Building and Loan Association.

---

1 With the republication of this case, in 29 L. R. A., p. 127, will be found other cases and very full note on pp. 120 and 134.—REPORTER.

2. That the said Assistance Building and Loan Association is a corporation organized under the laws of this State, and was at the times hereinafter mentioned such, doing business at Charleston, in said State.

3. That heretofore, to wit: on or about the 7th day of November, A. D. 1883, the defendant, Daniel Bryan, duly made, executed, and delivered his bond or obligation in writing, under seal, in the full and just sum of $2,800, wherein and whereby it was recited that whereas the above bound Daniel Bryan, having bid in an advance stock of $1,400 on seven (7) shares of the said association held by the said Daniel Bryan as a stockholder therein, and as collateral security has assigned to the said association the said shares, and has received for such advances in cash the sum of $840, and that it is contemplated that the said association shall wind up when the funds and assets of the same have so accumulated as to enable each stockholder and member thereof, upon a fair division, to be paid or receive two hundred dollars of property or assets on each and every share held by him or her. The said bond being conditioned that if the said Daniel Bryan, his heirs, executors or administrators, shall and do well and truly pay, or cause to be paid, unto the above named "Assistance Building and Loan Association" the monthly sum of $14 (of which the sum of $7 per month is for subscriptions to the said shares, and the sum of $7 per month is for interest on the said sum actually paid over to said Daniel Bryan), to be paid before the seventh of each and every month until the said association shall wind up and determine, and upon such winding up or determination shall transfer and surrender the said seven (7) shares to the said association, in satisfaction of the advance aforesaid, and shall stand to and abide by the constitution, rules, and regulations of said association, then the above obligation to be void and of none effect, or else to remain in full force and virtue: Provided, that this contract shall not be construed in any manner to provide for more than the highest rate of interest allowed by law for the use of any sum actually obtained from said association.

4. That on the 7th day of November, 1888, to secure the per-

formance of the conditions of said bond or obligation, the defendant, Daniel Bryan, duly made, executed, and delivered to the said Assistance Building and Loan Association his deed, and thereby conveyed by way of mortgage to the said Assistance Building and Loan Association, its successors and assigns, the following lands and tenements in the County of Charleston, and State aforesaid, to wit: * * *

5. That on the      day of      , 188 , the said mortgage was delivered to the register of mesne conveyance of said county, to be by him entered on record, and was on said date recorded in book Q, No. 18, page 270.

6. That the said Daniel Bryan has failed to pay the monthly instalments due, respectively, as follows, to wit: on the 7th day of May, 1892, known as the 105th instalment, and instalment due on the 7th day of June, 1892, known as the 106th instalment, and the instalment due on the 7th day of July, 1892, known as the 107th instalment, and the instalment due on the 7th day of August, 1892, known as the 108th instalment, and the instalment due on the 7th day of September, 1892, known as the 109th instalment; and that each and all of said monthly dues or instalments have been due for more than the space of three months, and that the said Daniel Bryan has neglected and refused to pay the same, whereby the condition of said bond has been broken, and this plaintiff, suing as receiver of said Assistance Building and Loan Association, is entitled to have a foreclosure of said mortgage decreed by this honorable court, and judgment and execution for any deficiency.

Wherefore, the plaintiff demands judgment: *First.* That the liability of the said defendant, Daniel Bryan, under and by virtue of the said bond or obligation, be determined by this honorable court, and the amount thereof fixed and ascertained. *Second.* That upon the liability of the defendant therein being so determined and ascertained, that a foreclosure of the said mortgage be decreed, and that the property therein described be sold, and the proceeds applied first to the payment of the costs and expenses of these proceedings, next to the payment of any taxes which may be liens on the said premises, and then to the payment of whatever sum of money may then be due

upon the said bond and mortgage so held by this plaintiff. *Third.* That the defendant, Daniel Bryan, may be adjudged to pay any deficiency which may exist after applying all of such sales moneys as hereinbefore prayed for, and that the plaintiff have leave to enter judgment and issue execution against the said defendant, Daniel Bryan, therefor. *Fourth.* That the defendant, Daniel Bryan, and all persons claiming under him subsequent to the commencement of this action, may be barred and foreclosed of all equity of redemption or other interest in the said mortgaged premises. *Fifth.* That the plaintiff may have such other and further relief as the nature of his case may demand and to this honorable court seem meet.

From an order overruling a demurrer to this complaint, the defendant appealed on the following grounds:

1. Because the complaint herein did not state facts sufficient to constitute a cause of action, and the Circuit Judge erred in overruling defendant's demurrer interposed upon that ground.

2. Because in overruling the demurrer to the complaint, his honor in effect ruled that a receiver of an insolvent building and loan association, which has run the period of its natural life, can sue the borrowing members of said association for further payments, notwithstanding the fact that the association has ceased to be in operation, and no equivalent collections are made from the non-borrowing members of said association.

3. Because to allow the collections sued for in the complaint, is to authorize the collection of an extortionate and usurious rate of interest.

*Messrs. Fitzsimons & Moffett* and *H. E. Young*, for appellant.

*Messrs. Mordecai & Gadsden* and *B. H. Rutledge*, contra.

April 16, 1895. The opinion of the court was delivered by

MR. JUSTICE GARY. This is an appeal from an order of the Circuit Judge overruling a demurrer to the complaint on the ground that it did not state facts sufficient to constitute a cause of action. The complaint and exceptions Nos. 1, 2, and 3 will accompany the report of the case.

The appellant contends that the complaint shows upon its face that the mortgage has been paid. In considering this question, this court must determine whether the monthly payments for subscriptions to the shares of stock should have been applied upon the mortgage. The authorities upon this question are by no means harmonious. The question has not directly been decided in this State, though there are authorities bearing upon this point. The authorities in our State have, however, determined two questions: (1) That the money advanced was a loan; (2) that where the mortgage is to secure the monthly payments of interest and dues, and the contract is declared to be usurious, the borrower is entitled to a credit, not only for the amount paid as interest, but also for the amount paid for subscription on the shares of stock, in ascertaining the amount due on the mortgage.

In the case of *Association* v. *Bollinger*, 12 Rich. Eq., 126, it appears that in December, 1854, Bollinger, who was a member of the association and holder of ten shares of the capital stock, bid off $2,000 of the funds of the corporation at the premium of thirty-five per cent. The contract, in the beginning, allowed a discount of $700 on an advance of $1,300, which was called a purchase of $2,000 of the funds of the corporation. This sum of $2,000, and interest at six per cent., was to be repaid in sums of twenty dollars at the end of each month succeeding the 14th of December, 1854, the date of the bond and mortgage. These were the provisions of the bond. Before the second Monday of December, 1854, the defendant had made thirty-two monthly payments, amounting to $320. After the execution of the bond and mortgage, the monthly payments required by the condition thereof were duly made until November, 1856. This constituted a further sum paid of $460. The actual payments on the loan or advance amounted to $1,480. Bollinger set up the plea of usury, which was sustained. Chief Justice O'Neall, delivering the opinion of the court, after reciting the provision of the usury law then of force, concludes as follows: "Under this provision, the corporation will be entitled to recover the sum actually loaned, deducting the payments made. The result will be, that $1,300 will be the principal, on which payments to the

amount of $1,480 have been made; so the corporation has been
overpaid $180. The consequence is, that the complainant's bill
must be dismissed." It will thus be seen that, in determining
the amount due under the mortgage, the association was re-
quired to deduct, not only the amount of the dues paid *after*
the execution of the mortgage, but also the amount of those
paid *before* the execution of the mortgage.

In the case of *Mechanics' & Farmers' B. & L. Association* v.
*Dorsey*, 15 S. C., 462, it appears that in 1878 the defendant ob-
tained a loan of $1,000 from the said company, and, to secure
this loan, gave his bond, with mortgage of real estate, condi-
tioned to pay to the association monthly the sum of $17.25,
itemized as follows: $5 for monthly subscription on his share;
$5 for interest on the sum advanced to him, at the rate of six
per cent. per annum; and $7.25 for the monthly premium which
he contracted to give for the loan—in all, $17.25. He obtained
this sum at public sale, agreeing to give a premium of $1.45,
which premium was to be paid monthly, and amounted to $7.25
for five shares. For this amount and for the monthly interest,
as also the monthly subscription on his five shares, he gave the
bond and mortgage above mentioned; the monthly payments,
as therein stated, being, in the aggregate $17.25. The defend-
ant failed to meet his bond, and suit was commenced to foreclose
the mortgage. The defendant pleaded usury. The following
appears in the decree of the Circuit Judge, which was affirmed
on appeal to the Supreme Court: "It is the opinion of this
court, that the interest paid to the association plaintiff by the
defendant, John Dorsey, should be credited upon the dues that
should legally have been collected by the plaintiff, to wit: $5.83
per month, which is the interest monthly on $1,000 at the rate
of seven per cent. per annum. The amount in interest, instal-
ments, and premium paid into the association plaintiff from
January, 1878, to November, 1879, by the defendant, John Dor-
sey, was $174.75. The amount to which the association was
entitled from the same date to November, 1879, at seven per
cent. per annum, was $134.09, leaving a balance of $40.66 in
favor of John Dorsey. It is, therefore, ordered, adjudged, and
decreed, (1) that the complaint be dismissed, with costs; (2)

that the balance of $40.66 be placed to the credit of the defendant, John Dorsey, on the books of the association plaintiff, who shall apply the same, at the rate of $5.83 monthly, to the satisfaction of the defendant's dues, until the said amount of $40.66 shall have been exhausted." The complaint in that case alleged that the defendant, at the time the action was brought, to wit: September, 1879, was in arrears nine months of subscription, interest, and premium, and that the principal sum was, therefore, due also.

Chief Justice Simpson, delivering the opinion of the court in that case, says: "We regard the question here as settled by the case of *Columbia B. & L. Association* v. *Bollinger*, 12 Rich. Eq., 124, in which a very learned and able opinion of the distinguished chancellor on the Circuit, Chancellor Carroll, was overruled by the Supreme Court. That case and this are almost identical. The charters of the two companies were nearly the same; the by-laws almost exactly alike. A stockholder in that company, as in this, borrowed in advance a certain sum of money, which he expected would ultimately be his. He borrowed at public bidding, as in this. He contracted, as here, by bond and mortgage, to pay the monthly interest. The premium, instead of being paid monthly, was deducted at the time of the contract. This was paid in cash, instead of by monthly instalments. This is the only difference between the cases. Is this a difference in principle? We do not so understand it. The court in that case held the contract usurious; Judge O'Neall, with that strong conviction which characterized all of his opinions, declaring 'that there was no doubt about it;' and, but for the earnest and able decree of Chancellor Carroll, he would not have thought it necessary even to look into the authorities on the subject. The argument of Chancellor Carroll, and the opinion of the Supreme Court overruling it, present the two opposing views on this subject. The decree of Chancellor Carroll is based upon two prominent grounds: First. That the dealing of the parties was a transaction between partners and in reference to partnership funds, and was not a loan. He cited *Silver* v. *Barnes*, 6 Bing. N. C., 180, and several English authorities. Second. That the money advanced to Bollinger was

but that which he (Bollinger) would get when the corporation wound up, and if he was willing to deduct $300—the premium—because he was getting the money in advance, there was nothing illegal in this. In that case, as has already been stated, the premium was deducted at the time the contract was made, instead of being contracted to be paid in monthly instalments, as the interest was to be paid. The chancellor thought that, in this respect, it was like a party agreeing to take less for a debt than the amount actually due, and, having executed the contract, he could not afterwards dispute or repudiate it. These positions, which are the only ones that can be taken with any plausibility in support of such a contract, after full consideration by the Supreme Court, were overruled, and the contract of Bollinger was declared usurious. We are bound by this decision." In the case of *Thompson* v. *Gillison*, 28 S. C., 542, the monthly stock payments were calculated as payments on the bond, in testing the question of usury.

The authorities establish the following propositions: (1) That the appointment of a receiver terminates the contract with the mortgagor, as originally contemplated. (2) That the mortgagor, who is also a shareholder, is not liable for monthly dues accruing after the appointment of a receiver. (3) That upon the determination of his contract with the association, as originally contemplated, the mortgagor is entitled as credits on his mortgage, both for the amounts paid as interest, and also as dues on his shares of stock. (4) That, where the amounts paid by the mortgagor as interest and dues aggregate a sum equal to the amount the mortgage was given to secure, a complaint for foreclosure of the mortgage will not be sustained. (5) That if the association goes into the hands of a receiver before the interest on the amount actually advanced, at the rate specified in the contract, and for the length of time the contract was in full force and effect, equals the amount of the premium; then the amount due under the mortgage is to be ascertained by calculating interest on the amount actually advanced, at the rate agreed upon, for the length of time the contract remained of force as originally entered into, and deducting from such

amount all payments of interest and dues; the amount paid as interest and dues not to bear interest. In such a contract as this, the interest would be calculated at the rate of ten per cent. per annum. (6) The assignment and transfer of the shares of stock by the mortgagor as collateral security for the loan, and consolidating the interest and dues in the mortgage, show that the amount paid monthly, consisting of interest and dues, is to be regarded as what is called "redemption money," and raises an implied agreement that such payment shall be credited on the mortgage.

In support of our positions on these questions, we cite the following authorities: Thomp. Bldg. Ass., c. 8, §§ 30, 42, 50; *Id.*, c. 12, §§ 5, 13; End. Bldg. Ass., §§ 333, 373, 496, 498, 502; 2 Am. & Eng. Enc. Law, pp. 629, 642; *Randall* v. *National B. & L. Protective Union* (Neb.), 60 N. W. Rep., 1019; *Brownlie* v. *Russell* (1883), L. R., 8 App. Cas., 248. The leading authorities sustaining a contrary rule as to payments are, *Strohen* v. *Association* (Pa. Sup.), 8 Atl. Rep., 843; *Rogers* v. *Hargo* (Tenn.), 20 S. W. Rep., 430; *Towle* v. *Society*, 61 Fed. Rep., 446.

The complaint shows upon its face that the payments made by the defendant exceed the amount due under the mortgage. We decide nothing as to the demurrer to the answer. This action of foreclosure cannot, therefore, be sustained.

It is the judgment of this court, that the judgment of the Circuit Court be reversed, and the complaint dismissed.

In this case there was a petition for rehearing, which was refused by an order of May 14, 1895,

PER CURIAM. After a careful consideration of this petition, the court is unable to discover that any material fact or principle of law has been either overlooked or disregarded, and hence there is no ground for a rehearing. It is, therefore, ordered, that the petition be dismissed and the stay of the remittitur heretofore granted be revoked.