(77 N. W. Rep. 1006.)

---

## Wm. D. Hale *vs.* Ella Cairns, *et al.*

Opinion filed November 19, 1898.

**Building Association—Loan to Member—Application of Payments.**

> A member of a building and loan association, who borrows money from the association, and bids a premium for the privilege of obtaining the loan, and executes his bond for the amount of the loan and premium, and gives a mortgage to secure the payment of such bond, and also assigns to such association his shares of stock as collateral security for such payment, is not entitled, in an action brought to foreclose such mortgage by the receiver of such association (said association being insolvent), to apply the amounts he has paid as dues upon his stock in reduction of his indebtedness.

Appeal from District Court, Cavalier County; *Sauter,* J.

Action by William D. Hale, as receiver of the American Savings & Loan Association, against Mrs. Ella Cairns and others. Judgment for defendants, and plaintiff appeals.

Reversed.

*Cochrane & Corliss,* for appellant.

N. D. R.—10

. The plaintiff may as foreign receiver maintain this action. High. on Receivers, § 241; Beach on Receivers, § 682; 6 Thomp. Corp. § 7340; *Rogers* v. *Riley*, 80 Fed. Rep. 759; *Metzner* v. *Beauer*, 98 Ind. 425; *Toronto Cent. T. Co.* v. *Ry. Co.*, 123 N. Y. 37; *Boulware* v. *Davis*, 90 Ala. 207; *Gilman* v. *Ketchman*, 84 Wis. 60; *Comstock* v. *Frederickson*, 51 Minn. 450; *Johnston* v. *Rogers*, 43 S. W. Rep. 234; *Herd* v. *City*, 42 N. J. L. 1; *Falk* v. *Jannes*, 23 Atl. Rep. 813; 2 Beach Mod. Eq. Pr. § 747; 21 Am. & Eng. Enc. L. 240. The association having assigned the bond and mortgage to plaintiff, he can sue as owner. High on Rec. § 244; *Graydon* v. *Church*, 7 Mich. 36; *Smith* v. *Ry. Co.*, 23 Wis. 267, 270. Even without a statute to that effect the charging of a premium will not render a transaction like the one at bar usurious. 4 Am. & Eng. Enc. L. (2nd Ed.) 1055; *Reeve* v. *Ass'n*, 19 S. W. Rep. 917; *Abbott* v. *Ass'n*, 23 S. W. Rep. 629; *Setliff* v. *Ass'n*, 39 S. W. Rep. 546; *Bank* v. *Cook*, 60 Ark. 288; *Reynolds* v. *Ass'n*, 29 S. E. Rep. 187; *Tilley* v. *Ass'n*, 52 Fed. Rep. 618; *American Hd. Co.* v. *Linnigan*, 15 So. Rep. 369; *Pioneer S. & L. Co.* v. *Cannon*, 36 S. W. Rep. 386; Endlich on Bldg. Assn, 341 to 356. Note to 46 Am. St. Repts. 200. Cases cited in 69 Am. Dec. 161; *Vermont L. & T. Co.* v. *Whithed*, 2 N. D. 82. The contract was not usurious under the Minnesota statute. § 2879, Stats. 1894. The same rule is embodied in our statute and has been since 1885. Sec. 6, Ch. 34, Laws 1885; § 3174 Comp. Laws; § 3208 Rev. Codes; *Freie* v. *Ass'n*, 46 N. E. Rep. 784. The legality of a contract is governed by the law with reference to which the parties contracted. The question what law the parties had in view is one of intention. Story on Confl. Law, § 273, n. 4, 479 i., 479 k., 479 m.; Whart. on Confl. of Laws, § 394; *Watts* v. *Camors*, 115 U. S. 353; *Liverpool Steam Co.* v. *Ins. Co.*, 129 U. S. 397; *London Assurance Co.* v. *Campanhie*, 167 U. S. 149, 161; *Wilson* v. *Lewiston Mill Co.*, 44 N. E. Rep. 959. The parties to a contract may stipulate therein what law shall govern its validity, and such stipulation will be enforced. *New Eng. Sec. Co.* v. *McLaughlin*, 13 S. E. Rep. 81; *Dugan* v. *Lewis*, 14 S. W. Rep. 1024; *Caesar* v. *Capell*, 83 Fed. Rep. 403; *Lanier* v. *Co.*, 40 S. W. Rep. 466. This rule applies where the question of usury is not involved. *Vorheis* v. *Peoples Society*, 51 N. W. Rep. 1109; *Jones* v. *Co.*, 63 N. W. Rep. 553; *Penn. Mut. Life Ins. Co.* v. *Co.*, 72 N. W. Rep. 413; *Griesemer* v. *Ins. Co.*, 38 Pac. Rep. 1031; *Watson* v. *Lane*, 20 Atl. Rep. 894. Again the contract should be governed by the laws of Minnesota for the reason that the bond and mortgage are payable in that state. *Bigelow* v. *Burnham*, 83 Iowa 120; *Hull* v. *Cordell*, 142 U. S. 116; *Nat. Mut. B. & L. Ass'n* v. *Ashworth*, 22 S. E. Rep. 521; *Andrews* v. *Pond*, 13 Pet. 65; *Nickels* v. *Peoples Ass'n*, 25 S. E. Rep. 8; *Hubbell* v. *Company*, 32 S. W. Rep. 965; *Odom* v. *Trust Co.*, 18 S. E. Rep. 131; *Sharp* v. *Davies*, 7 Baxt. 607; *Buchanan* v. *Bank*, 55 Fed. Rep. 223; *B. & L. Ass'n* v. *Logan*, 66 Fed. Rep. 827; *Bennett* v. *Ass'n*, 35 Atl. Rep. 684; *Pioneer S. & L. Ass'n* v. *Cannon*, 36 S. W. Rep. 386;

*Equitable B. & L. Ass'n* v. *Vance,* 27 S. E. Rep. 274; *Equitable B. & L. Ass'n* v. *Hoffman,* 27 S. E. Rep. 692. The mere signing of the bond and mortgage in North Dakota did not make them a North Dakota contract. They did not become binding obligations until they had been received and accepted by the association at its home office in Minneapolis. It was there that they were delivered and accepted. It is the place of delivery, and not the place of execution which is the real place of making of the contract. *Commercial Bank* v. *Simpson,* 90 N. C. 467; *Watson* v. *Lane,* 20 Atl. Rep. 894; *Barrett* v. *Dodge,* 19 Atl. Rep. 530; *Johnson* v. *Gawtry,* 83 Mo. 339; *Buchanan* v. *Drovers Nat. Bank,* 55 Fed. Rep. 223. When a tribunal has a fair choice between the laws of two states it will select the laws of that state where the contract is legal, rather than the laws of the state where the contract would be void. *Bigelow* v. *Burnham,* 90 Ia. 300, 83 Ia. 120; Whart. Confl. Laws, § 429; *Dugan* v. *Lewis,* 79 Tex. 246; *Pritchard* v. *Norton,* 106 U. S. 124; *Gibson* v. *Ins. Co.,* 77 Fed. Rep. 561; *Bell* v. *Packard,* 69 Me. 111; In re Missouri S. S. Co., 42 Ch. Div. 329; 46 Am. St. Rep. 201, 202 n.; 40 Conn. 226, 236. The borrower was a citizen of this state the lender a Minnesota corporation, the parties had a right to contract with reference to the usury laws of either jurisdiction, and the courts will presume that they contracted with reference to the laws of that state where the transaction is legal and not with a view to the laws of the state where the transaction would be void. *Underwood* v. *Am. Mtge Co.,* 24 S. E. Rep. 847; *Miller* v. *Tiffany,* 1 Wall. 298; *Soudder* v. *Union Nat. Bank,* 60 Fed. Rep. 730; *Bigelow* v. *Burnham,* 83 Ia. 120; *Smith* v. *Parsons,* 57 N. W. Rep. 311; *New Eng. Co.* v. *McLaughlin,* 13 S. E. Rep. 81; *Dugan* v. *Lewis,* 14 S. W. Rep. 1024; *Watson* v. *Lane,* 52 N. J. Law 550; *Cromwell* v. *County of Sac.,* 96 U. S. 51-62; *Andrews* v. *Pond,* 13 Pet. 77; Daniel's Neg. Instr'u'ts, § 922; 2 Kent Comm. 460; *Robinson* v. *Bland,* 2 Bur. 1077. The fact that the loan is made on real estate in another state is not controlling. This fact does not make it imperative that the usury law of the state where the land is located should be applied to the transaction. *Central Trust Co.* v. *Burton,* 74 Wis. 329; *Fessenden* v. *Taft,* 17 Atl. Rep. 713; *Oregon Trust Co.* v. *Rathburn,* 5 Sawyer 32, S. C. 18 Fed. Cases, No. 10,555; 4 Law & Eq. Rep. 650. At the time the contract in suit was made no part of the principal was forfeited for usury, the lender in this state forfeited interest only. § 3723 Comp. Laws. The usury law of 1890 went into effect July 1st of that year. Ch. 184, Laws 1890. In no event, therefore, could defendants defeat this action after crediting all payments made as interest, there would still remain due $216. There is no by-law proven in this case, showing that the association fixed by by-law, a minimum premimum for which it would make a loan. Even in the face of such a by-law, defendant could not defeat recovery without showing that in making bid for the loan the borrower acted under the compulsion of such by-law or was influenced thereby. Endlich on Bldg Assns, 411; *Albright* v.

*Ass'n,* 102 Pa. St. 411, 424; *McCauley* v. *Ass'n,* 37 S. W. Rep. 212. The insolvency of the association followed by the appointment of the receiver has the effect to render the sum loaned due without reference to the terms of the contract. *Curtiss* v. *Ass'n,* 36 Atl. Rep. 1023; *Strohen* v. *Ass'n,* 115 Pa. St. 273; *Towle* v. *Society,* 61 Fed. Rep. 446; *Ass'n* v. *Buck,* 1 Atl. Rep. 561; *Rogers* v. *Hargo,* 20 S. W. Rep. 430; *Weir* v. *Assn,* 38 Atl. Rep. 643; Endlich Building Ass'n, § 523; *Rogers* v. *Raines,* 38 S. W. Rep. 483; *Strauss* v. *Ass'n,* 23 S. E. Rep. 450. Dues paid will not be considered in determining the amount due upon the loan. *Wolford* v. *Ass'n,* 40 N. E. Rep. 694; *Eversman* v. *Schmitt,* 41 N. E. Rep. 139; *Curtiss* v. *Ass'n,* 36 Atl. Rep. 1023; *Goodrich* v. *Ass'n,* 54 Ga. 98; *Strohen* v. *Ass'n,* 8 Atl. Rep. 843; *Rogers* v. *Hargo,* 20 S. W. Rep. 430; *Sullivan* v. *Stucky,* 86 Fed. Rep. 491; *Brown* v. *Archer,* 62 Mo. App. 277; *Weir* v. *Ass'n,* 38 Atl. Rep. 643; *American Ass'n* v. *Gray,* 38 Atl. Rep. 668; *Price* v. *Kendall,* 36 S. W. Rep. 810; *Post* v. *Ass'n,* 37 S. W. Rep. 216; *Knutson* v. *Ass'n,* 69 N. W. Rep. 889. When a person becomes a stockholder in such association he becomes an investor and takes all the risks of an investor. By borrowing money of the association he does not in any manner change his attitude or increase his rights. In case of insolvency the only way to ascertain how much the business has been a failure and how much each stockholder ought to lose is to have all borrowing stockholders return to the association the moneys advanced with interest, less money paid by them on account of the loan. The dues therefore paid upon stock, do not constitute payments upon the loan. Endlich Bldg Ass'ns, § 448, 452, 477 and 478; *Pioneer S. & L. Ass'n* v. *Cannon,* 36 S. W. Rep. 386; *Southern B. & L. Ass'n* v. *Trust Co.,* 15 So. Rep. 123; *Post* v. *Ass'n,* 37 S. W. Rep. 216; 4 Am. & Eng. Enc. L. (2nd Ed.) 1057, 1058. It is conceded that any portion of the premium paid or any interest paid thereon should be deducted from the amount due. *Weir* v. *Ass'n,* 38 Atl. Rep. 643; *Moran* v. *Gray,* 38 Atl. Rep. 668; *Rogers* v. *Raines,* 38 S. W. Rep. 483; *Curtiss* v. *Ass'n,* 36 Atl. Rep. 1023; *Post* v. *Ass'n,* 36 S. W. Rep. 216; Endlich Building Ass'ns, § 523 and 531. Although it has been held that only a proportionate part of the premium paid should be credited to the debtor. *Sullivan* v. *Stucky,* 86 Fed. Rep. 491; *Towle* v. *Society,* 61 Fed. Rep. 446; *Weir* v. *Ass'n,* 38 Atl. Rep. 643-646. As the association is not allowed to enforce the bid of premium it should not be held to its contract to let Cairns have the money at the low rate of six per cent. but should be allowed to charge and collect the legal rate, 7 per cent. *Weir* v. *Ass'n,* 38 Atl. Rep. 643; 4 Am. & Eng. Enc. L. (2nd Ed.) 1081.

*M. H. Brennan,* for respondent.

Plaintiff claims to act in a capacity which will not be recognized by foreign jurisdictions in matters pertaining to realty. Smith on Receiver, § 84. The exemption of building and loan associations from the usury law only relates to domestic corporations, § 3171

Comp. Laws; *Falls* v. *Ass'n,* 97 Ala. 417; *Ewing* v. *Toledo Sav. Bk.,* 10 Am. & Eng. Corp., Caces 447; *National Loan & Ins. Co.* v. *Stone,* 46 S. W. Rep. 67. These contracts are usurious unless authorized by the state where made. *Falls* v. *Ass'n,* 97 Ala. 417; *Citizens' Security Co.* v. *Uhler,* 48 Md. 455; *Geiger* v. *Ass'n,* 58 Md. 569; *Reiser* v. *Ass'n,* 39 Pa. St. 137; *International Ass'n* v. *Mayers,* 25 S. W. Rep. 1132; *Columbia B. & L. Ass'n* v. *Bollinger,* 78 Am. Dec. 463; *International B. & L. Ass'n* v. *Beiring,* 86 Tex. 484. The premium paid is a cover for usury, it is an artful device to secure for the use of money loaned a price greater than that allowed by law. *Lincoln* v. *B. & L. Ass'n,* 7 Neb. 173; *Simpson* v. *Ass'n,* 42 S. W. Rep. 834; *Watts* v. *Ass'n,* 42 S. W. Rep. 839; *Mills* v. *Ass'n,* 75 N. C. 292; *Mechanics' etc.* v. *Wilcox,* 24 Conn. 153; *Martin* v. *Ass'n,* 2 Cold. 418; *Stevens* v. *Ass'n,* 51 Pac. Rep. 779, S. C. 51 Pac. Rep. 936; *Clague* v. *Creditors,* 20 Am. Dec. 300. The borrower in cases of insolvency is entitled to credit for all payments made. *Rochester Sav. Bk.* v. *Whitmore,* 49 N. Y. Supp. 862; *Thompson* v. *Ass'n,* 27 S. E. Rep. 118; *Strauss* v. *Ass'n,* 23 S. E. Rep. 450; *Robertson* v. *Ass'n,* 69 Am. Dec. 162; *Buist* v. *Ass'n,* 29 L. R. A. 127.

BARTHOLOMEW, C. J.    William D. Hale, the appellant, is the duly appointed receiver of the American Savings & Loan Association. As such he seeks to foreclose a mortgage given by Robert Cairns and Ella Cairns to said association. Robert Cairns died before the action was brought, and the defendants Mary and Robert Cairns are his heirs at law. The American Savings & Loan Association was a corporation organized and doing business under the laws of the State of Minnesota, with its home office at Minneapolis. The allegations of the complaint, aside from the allegations as to the insolvency of the association and the appointment of the receiver, are substantially the same as in the case of *Loan Co.* v. *Shain,* (decided at this term) 8 N. D. —, 77 N. W. Rep. 1006. The answer also raises the same issues as in that case. Following the decision in that case, we hold that the contract in this case must be governed by the laws of the State of Minnesota, and that said contract is not usurious.

Upon the question of the proper credits to be given to the defendants, this case differs materially from the Shain case, as the association has become insolvent, and is unable to mature the stock, and consequently unable to complete the contract on its part. In this case the loan was $400, and the premium bid was $400. The evidence of indebtedness took the form of a bond. Ella Cairns signed as one of the obligors. The bond was for $800, but only the sum of $400 drew interest, and that at the rate of 6 per cent. Eight shares of stock were assigned to the association as collateral security; the bond to be paid by the absolute surrender of such stock at maturity. The bond was payable on or before nine years from date. It is conceded, as we understand the record, that on December 19, 1888, Robert Cairns, deceased, subscribed for, and there were issued to

him, ten shares of stock in said association. Subsequently two of said shares were surrendered, and they figure in no manner in this controversy, and we shall treat the matter as a subscription for eight shares. Upon these shares he contracted to make monthly payments at the rate of 60 cents upon each share until the stock matures. Cairns did not apply for a loan until more than a year thereafter, and the loan was not actually made until March 8, 1890. All payments up to that time had been kept up. Consequently there had been paid upon said eight shares, before the loan was made, the sum of $67.20. From the time the loan was made until the insolvency of the association the stock payments were regularly made. This included all payments up to and including October, 1895. Hence he paid upon his stock, after the loan, the further sum of $321.60; and of this amount one-half, or $160.80, was paid upon stock held by the association as collateral security for the bonus or premium. The interest upon the loan of $400 was also paid monthly in advance, and amounted during said term to $134. For what amount of the sums so paid should the respondents receive credit?

This question has received very different answers at the hands of different courts. It has never yet been answered by this Court. It has been held that a proper and equitable adjustment, in cases where the association has become insolvent and unable to mature its stock, is to charge the borrowing member with the amount of money received, with legal interest thereon, and credit him with all that he has paid, "whether paid as fines, penalties, or dues." *Strauss* v. *Association*, 117 N. C. 308, 23 S. E. Rep. 450; *Thompson* v. *Association*, 120 N. C. 420, 27 S. E. Rep. 118; *Buist* v. *Bryan* (S. C.) 21 S. E. Rep. 537. See, also, *Bank* v. *Whitmore* (Sup.) 49 N. Y. Supp. 862. In this case the question was presented in an involved form, and just what the Court decided is not clear. Respondent also cites in this connection *Randall* v. *Protective Union*, 42 Neb. 809, 60 N. W. Rep. 1019. But in that case the association involved was, so far as the record discloses, an entirely solvent corporation; and under such circumstances there can be no injustice in crediting a borrowing member, who chooses to surrender the stock pledged, with all that he has paid thereon. This rule has been frequently applied in Pennsylvania. *North American Garden Ass'n* v. *Tradesman's Bldg. Ass'n*, 46 Pa. St. 493; *Watkins* v. *Association*, 97 Pa. St. 514. But that a different rule, as to credits to be given, should be applied in solvent and insolvent corporations is, we think, entirely clear. The rule is universal that when a corporation becomes insolvent there must be, or at least there may be, a loss to the stockholder. And, from their very nature, the certainty of loss in case of an insolvent building and loan association is greater than in many other forms of investment. They deal only with their members. Their capital consists exclusively of sums paid by their members. They cannot become insolvent in fact without an impairment of that capital, and, if there be an impairment, then the full amount of capital paid in cannot

be returned. That being true, every principle of their organization requires that every dollar of capital that has been paid in upon stock subscriptions should bear its proportionate share of the loss. In End. Bldg. Ass'n, § 514, it is said: "The truth is that there is implied, in the very essence of the building association scheme, an agreement between the members of every association, in the light of which all other agreements, and all rules and by-laws, must be read, and to which they must be conformed; and that is the agreement that all burdens shall be equally borne, as well as all profits equally shared,—that the whole enterprise shall be conducted and the rights and obligations of the participants in it shall be adjusted upon a basis of strict mutuality, equality, and fairness." It is evident that if, in cases of the insolvency of the association, all the borrowing stockholders are to be credited on their indebtedness with all the capital they have paid in, they suffer none of the impairment, and ultimately the entire loss must be borne by the nonborrowing members, and thus the basis of strict mutuality of burdens is entirely disregarded. Equity cannot, therefore, under such circumstances extend to the debtor credit for all he has paid upon his stock. This we think is the rule of the authorities, as well as of reason. *Eversmann* v. *Schmitt*, 53 Ohio St. 174, 41 N. E. Rep. 139; *Wholford* v. *Association*, 140 Ind. 662, 40 N. E. Rep. 694; *Weir* v. *Association* (N. J. Ch.) 38 Atl. Rep. 643; *Moran* v. *Gray*, Id. 668; *Curtiss* v. *Association*, 69 Conn. 6, 36 Atl. Rep. 1023; *Strohen* v. *Association*, 115 Pa. St. 273, 8 Atl. Rep. 843; *Post* v. *Association* (Tenn. Sup.) 37 S. W. Rep. 216.

But, viewing respondents in the light of borrowers only, and turning to the contract, we learn that, for the privilege of receiving the loan, respondents agreed to pay a premium of an amount equal to the cash received. That agreement was made by reason of the inducements held out by appellant, to the effect that both loan and premium could ultimately be paid by a surrender and cancellation of the stock when it reached par, and that the stock could be brought to that condition by small payments thereon at stated intervals, together with the profits that would accrue to such stock through the operations of the association. But the association, by reason of its insolvency, is unable to carry out its contract It cannot mature the stock. The inducement which caused the respondent to offer the large premium has failed. Hence, what ever has been paid upon such premium, if anything, should be credited to respondents. This we think is the better rule, and it is amply sustained by the authorities last cited, although some Courts have undertaken to apportion the premium, and treat a portion of it as earned. See *Towle* v. *Society*, 61 Fed. Rep. 446; *Sullivan* v. *Stucky*, 86 Fed. Rep. 491. But, under what we regard as the better rule, respondents claim that they should be credited with the dues paid upon the shares of stock that were assigned as collateral to the payment of the premium. (It will be remembered that the premium was included in the bond, but drew no interest.) We

held in the Shain case—and the authorities fully sustain the proposition—that payments made upon stock that was pledged as collateral security for the payment of the loan did not constitute payments upon the loan.    This was held upon the theory that the purchase of the stock and the borrowing of the money were distinct and separate transactions.    The stock was purchased as an investment, and for the profits which it promised, and these profits inure to the benefit of the purchaser alike whether the stock be pledged or unpledged.    *Goodrich* v. *Association,* 54 Ga. 98.    True, in the ultimate adjustment it was the intention to exchange the stock for the bond.    But, in the language of the New Jersey Court of Errors and Appeals in *Association* v. *Hornbacker,* 42 N. J. Law, 635, "until so exchanged, they are distinct in legal contemplation, as well as in form.    The stock is a collateral security for, and not a credit on, the bond."    No reason, in law or logic, presents itself to us, why the same rule must not apply to payments made upon stock that is pledged to secure the payment of the premium.    Such payment on stock are not payments upon the premium.    Hence in this case nothing has been paid upon the premium bid, and there is therefore nothing in that behalf with which to credit respondents.    It will be noticed that in this case appellant is not seeking to recover any of the premium.    He asks only the payment of the cash advanced, with certain interest thereon, and taxes paid.    The association having become insolvent, and having been in the hands of a receiver, it becomes the duty of that officer to proceed to collect the assets of the association.    It is his duty to close the business out.    The expectations of both parties have been disappointed.    The contract is at an end.    The interest upon this loan was paid, under the terms of the contract, to November 8, 1895.    The appellant is entitled to recover the original loan, with the legal rate of interest in Minnesota, which is 7 per cent., from said November 8, 1895.    Should respondents pay this amount, or should it be realized upon a sale of the mortgaged property, respondents will, of course, become the absolute owners of the shares of stock which were assigned as collateral security, and will be entitled to a reassignment thereof.    There is a claim made for taxes for the sum of $18.80, which the Court found were paid by plaintiff, and which should also be included in the judgment.

The trial court will set aside its judgment heretofore entered in this case, and enter judgment against the respondent Ella Cairns for the amount heretofore indicated, with the usual decree of foreclosure as to all the respondents.    It is so ordered.

Reversed.    All concur.