WILLIAM D. HALE, Receiver Appellant, v. A. D. KLINE AND HANNAH KLINE.

Insolvent Building and Loan Associations: RIGHT TO OFFSET BY BORROWING MEMBER. Defendant obtained twelve shares of stock in a building and loan association by offering a premium of $50 a share, and executed a note for $1,200, interest payable on $600. His certificates of stock provided that he should pay sixty cents monthly for each share until it was matured or was grown, 50 cents of which should go into the loan fund, and that whenever the monthly payments on the shares, together with the apportioned profits, amounted to $100, a share should be deemed matured. The note specified that if the installments of interest or monthly payments on the stock were paid until it matured, defendant, on surrender of the stock, should be entitled to the cancellation of his note. The company became insolvent, and its receiver sued to foreclose defendant's mortgage. *Held*, that defendant was not entitled to offset against his debt the amount paid as premiums on his stock on the ground that payment of the monthly dues, so far as it applied to six shares of the stock, was in reality a payment of the premiums contracted for, since it would give the borrowing stockholders an unjust advantage over the non-borrowing members, who were of necessity, compelled to await the final settlement of the affairs of the company, and to accept on their stock whatever the receiver might be able to pay.

| | |
|---|---|
| 113 | 523 |
| 114 | 219 |
| 113 | 523 |
| 118 | 539 |
| 113 | 523 |
| 121 | 42 |
| 121 | 48 |
| 113 | 523 |
| 126 | 750 |
| 113 | 523 |
| d129 | 377 |

*Appeal from Jones District Court.*—HON. W. G. THOMPSON, Judge.

FRIDAY, APRIL 12, 1901.

THE plaintiff is the receiver of an insolvent Minnesota corporation, which was organized and did business as a purely mutual association. On the twenty-fourth day of January, 1888, the defendant, A. D. Kline made written application for membership in said association, and at the same time subscribed for 12 shares of its stock. His application for membership was accepted, and a certificate for 12 shares of stock was issued to him. The certificate provided that the shareholder should pay to the association 60 cents monthly for each share of stock until it was matured or was withdrawn, and also that 50 cents of each monthly payment and all fines should go into the loan fund. The remainder of the monthly payments and all fees went into the general or expense fund. It further provided: "Whenever the monthly payments made on any share, together with the profits apportioned to such share, amount to $100, such share shall be deemed to have matured, and no more monthly payments shall be required. * * * If losses occur, they shall be deducted from individual profits so far as possible. Any deficiency may be charged up to the shares in force." The by-laws of the association provided that loans should be made to the members offering to pay the highest premium therefor, in addition to the interest charge of 6 per cent. per annum. The interest and premium were payable in advance or monthly, as determined by the directors. It was also provided in the by-laws: "Members obtaining loans shall execute such notes or bonds or mortgages as shall be required by the board of directors;" and "every borrower must assign to the association, as collateral security for his loan, one share of stock for each $100 of his loan including the premium." March 6, 1888, A. D. Kline made written application for a loan of $600, and offered a premium of $50 per share. The form of application used by him provided: "The mortgage and note will

be for the amount of the loan and premium together, but interest will not be charged on the premium, but on the money actually loaned." His application for a loan was accepted, he received the $600, and he and his wife executed the following note, June 20, 1888: "$1,200. Minneapolis., Minn., June 20, 1888. For value received, after three years from date, and before nine years from date, we promise to pay to the order of the American Building & Loan Association, at its home office in Minneapolis, Minnesota, the sum of twelve hundred dollars, with interest at the rate of six per cent, per annum on the sum of six hundred dollars, payable monthly. It is understood that this note is given for a loan obtained on twelve shares of stock óf said American Building and Loan Association, and, if the maker hereof fails to make any monthly payment on said stock or to pay any installment of interest for a period of six months after the same is due, then the whole amount of this note shall at once become due and payable. But if the maker hereof shall pay all installments of interest which become due hereon, and all fines and monthly payments which become due on said stock, until said stock becomes duly paid in, and of the value of $100 per share, and before any of said installments of interest or monthly payments shall have been past due for a period of six months, then, upon the surrender of said stock to said association, this note shall be deemed to be fully paid and cancelled. This note is understood to be made with reference to and under the laws of the state of Minnesota." A mortgage was given to secure this note, which contained substantially the same provision as the note as to the payment of monthly dues and interest and as to the maturity of the stock. All dues and the interest were paid up to the time the association went into the hands of the receiver. This action was brought to recover on the note the sum of $600 and interest unpaid, and to foreclose the mortgage for that amount. The district court allowed the defendants credit for the interest

paid, and for one-half of the dues paid, and rendered judgment against defendants, as prayed, for the balance found due on the $600 actually received by the defendants. The plaintiff appeals.—*Modified.*

*Springer & Clary* for appellant.

*J. W. Doxsee* for appellees.

SHERWIN, J.—The only question presented for our determination in this case is fhether the defendants are entitled to credit for any part of the dues paid on the 12 shares of stock issued to A. D. Kline, and assigned by him as collateral security for the loan and premium in question. At the outset of the discussion of this question, we should say that the association was purely a mutual one; that every stockholder was a member thereof; and that every member thereof was a stockholder. Except as to the liability incurred by borrowing money of the association, every member assumed the same liabilities, and was entitled to a proportionate share of its earnings, from whatever source derived. With this mutuality of interest and liability in view, what are the rights of the defendants, and the rights of the other members and creditors as represented by the plaintiff? There were two classes of members, which we may designate as "borrowers" and "nonborrowers." To become a borrower, it was necessary to offer a premium of so much per share on the shares held by the applicant. The premium which these defendants contracted to pay was $600, represented by one-half of the amount for which they gave their note. If the association had continued as a going concern until the monthly dues paid on the 12 shares of stock had matured the stock, then, by the terms of the note itself, a surrender of the stock could have been made in full payment of the money actually received and of the premium represented in the note, and in such case the defendants would, of course, receive indirectly the amount paid in dues. But the association became insolvent before

the maturity of the stock, and it is obvious that the rights and equities of the members are thereby placed upon a different footing. This changed condition has been held by some courts to operate as a rescission of the entire contract and to leave the members to an equitable adjustment of their rights and liabilities. It is conceded by all or by most of the courts, however, that the insolvency of such a mutual association releases the stockholders from further payment of dues on stock. It is the almost universal holding that, in the settlement of the affairs of an insolvent mutual association, a borrowing member, whose stock has not matured, shall be held for the amount of money actually received by him, with interest thereon, less the premium actually paid by him for the loan, and less the interest on the monthly payments of interest made by him. This rule applies to cases where the affairs of the association are not so far settled as to ascertain the value of the stock. When the value of the stock can be determined, the borrower would then be entitled to credit for its value in addition to the items heretofore mentioned. *Wilcoxen v. Smith,* 107 Iowa, 555; *Hale v. Cairns,* 8 N. D., 145, (77 N. W. Rep., 1010); *Phelps v. Loan Ass'n,* 121 Mich., 343, (80 N. W. Rep., 120); *Leahy v. Loan Ass'n,* 100 Wis., 555, (76 N. W. Rep., 625); *Knutson v. Building Ass'n,* 67 Minn., 201, (69 N. W. Rep., 889); *Rogers v. Hargo,* 92 Tenn., 35, (20 S. W. Rep. 430); *Weir v. Loan Ass'n,* 56 N. J. Ch., 234 (38 Atl. Rep., 643); *Curtis v. Provident Ass'n,* 69 Conn., 6, (36 Atl. Rep., 1023, 61 Am. St. Rep., 17), and see note to this case, page 24, 61 Am. St. Rep.; *People v. Lowe,* 117 N. Y., 175, (22 N. E. Rep., 1016). See, also, Endlich, Building Assn's (2d Ed.) 477; Am. & Eng. Enc. Law (2d ed.) 1080; *Post v. Loan Ass'n,* 97 Tenn. Sup., 408, (37 S. W. Rep., 216, 34 L. R. A., 201); *Strohen v. Loan Ass'n,* 115 Pa. Sup., 273 (8 Atl. Rep., 843). Many other states hold the same doctrine. In most of the cases where credit for the premium paid was allowed, it had been paid in cash in monthly installments; but in the

cases of *Phelps v. Loan Ass'n* and *Hale v. Cairns, supra,* the same conditions existed as in this case, as they both concerned this association.

Appellees urge, however, that payment of the monthly dues, so far as applied to six shares of this stock, was in reality the payment of the premiums contracted for. But this view will not stand the test of reason nor of equity. When the defendant A. D. Kline became a member of this association, he voluntarily placed himself on the plane of exact equality with the other members thereof. When he secured the loan, and executed his obligations therefor, he entered into a new, separate and distinct contract, whereby he agreed to pay a certain sum in cash, unless, by reason of the maturity of his stock, he should choose to surrender it in payment of his obligations. This was optional, not compulsory with him. His stock never matured. In common with every other member of the association, he was placed in an entirely different position. If permitted to offset the dues paid by him on any portion of his stock against his debt to the association, he would be deriving therefrom an unjust advantage over the nonborrowing members, who are, of necessity, compelled to take in final settlement for their stock whatever the receiver may be able to pay. To leave the borrowing member in this same class and situation is but just and equitable. By so holding, we leave him in this situation: He should be charged with the $600 actually received by him, with interest thereon from the date it was received at the rate of 7 per cent. per annum. On this amount he should be credited with the interest paid by him on the $600, and with the interest on this interest, computed thereon as partial payments, at the rate of 7 per cent. per annum. This leaves him with his 12 shares of stock, upon which he may receive whatever sum may be finally found payable upon settlement of the affairs of the association. As thus modified, the judgment is affirmed.—MODIFIED AND AFFIRMED.