14170

### LANKFORD v. BULL

(182 S. E., 756)

*Mr. Jesse W. Boyd,* for appellant,

*Messrs. Nicholls, Wyche & Russell,* for respondent,

November 13, 1935.

The opinion of the Court was delivered by Mr. Justice Baker.

This case reaches this Court on appeal from order of Hon. T. S. Sease, resident Circuit Judge, disallowing an offset to appellant for the sums paid upon his stock in Series 32 of Peoples Building & Loan Association against the sums due by him upon his note executed to and held by said association, its Series 34, which corporation is being liquidated by a receiver. It is a controversy without action brought pursuant to the terms of Section 668, Code of 1932, the agreed statement of facts being as follows:

"On November 21, 1889, the Peoples Building & Loan Association of Spartanburg, South Carolina, was chartered with an authorized capital of $80,000.00, which was afterwards increased to $500,000.00. The purpose of the corporation was the operation of a building and loan association, which should accumulate from the monthly contributions of its members a fund for the purpose of enabling such members to build or purchase houses or real estate.

"Following its incorporation, the association was conducted along the same general lines of building and loan associations ordinarily. It opened books of subscription, and its stockholders paid regularly monthly amounts upon their subscriptions. This stock was regularly matured and paid off, with the exception of the several series unmatured at the time of the appointment of a receiver, as hereinafter set forth.

"The constitution and by-laws of the corporation were amended in 1891, to provide that all shares outstanding on October 31, 1891, should constitute Series 1, and all shares issued thereafter should constitute Series No. 2. Included in such amendent was this provision: 'Series No. 1 and No. 2 shall be in all respects subject to the same rules and

regulations; but the funds and property of each shall be separate and distinct, and the accounts shall be thus kept, the aggregate number of shares in both series never being in excess of the limit allowed by the charter as amended.' In identical fashion, new series of the association, including Series 32 and 34 hereafter referred to, were opened by amendments to the constitution and by-laws of the association, which always incorporated the provision just quoted that 'the funds and property of each (series) shall be separate and distinct, and the accounts shall be thus kept.' The amendments under which Series 32 and 34 were opened are respectively as follows: 'XXXVIII. Sec. 1. The shares issued after October 31, 1927, shall constitute Series No. 32. Sec. 2. Series Nos. 26, 27, 28, 29, 30, 31 and 32 shall in all respects be subject to the same rules and regulations, but the funds and property of each series shall be separate and distinct, and the accounts shall be kept in that way. The aggregate number of shares in all existing series shall not exceed the number allowed in the charter, as amended.'

" 'Article XL. Sec. 1. The shares issued after October 31, 1929, shall constitute Series No. 34. Sec. 2. Series Nos. 28, 29, 30, 31, 32, 33 and 34 shall in all respects be subject to the same rules and regulations, but the funds and property of each series shall be separate and distinct, and the accounts shall be kept in that way. The aggregate number of shares in all existing series shall not exceed the number allowed in the charter, as amended'.

"In keeping with these provisions of the constitution and by-laws of the association, all loans made were made by the separate series and almost invariably the notes evidencing such loans were payable to the specific series owning such notes. The several series had different stockholders. The accounts, funds and properties of the different series were kept separate and distinct. The series maintained separate bank accounts.

"On March 9, 1932, B. C. Lankford borrowed of the Peoples·Building & Loan Association, Series 34, the sum of $250.00, and to evidence such loan, executed his note payable six months after date to 'The Peoples Building & Loan Association, Series 34, or order'. To secure that loan, Mr. Lankford pledged 5 shares of stock issued to him by the Peoples Building & Loan Association, Series 32. He had subscribed to this stock in Series 32 in November, 1927. Beginning with November 8, 1927, and continuing monthly through June 14, 1932, he paid regularly the sum of $5.00 per month in this stock. The total amount paid in by him upon such stock in this manner was $280.00

"On January 6, 1933, the Peoples Building & Loan Association became insolvent, and, under appropriate proceedings, L. R. Bull was duly appointed by the Court of Common Pleas of Spartanburg County the receiver thereof.

"After the appointment of a receiver for the entire association, Mr. Lankford asserted the right to offset his payments made upon his stock in Series 32 of the association against his note to Series 34 of the same association. The receiver refused to allow such offset and referred to the provision of the constitution and by-laws of the association, already set forth herein, requiring that 'the funds and property of each (series of the association) shall be separate and distinct, and the account shall be thus kept.' "

The sole question to be decided is, Can a stockholder in one series of a building and loan association offset his payments upon such stock against his debt to the association, the money loaned the stockholder being the property of another series of the association, when the loan is secured by a pledge of the stock, in derogation of a by-law of the association providing that the several series of the association shall be distinct and their funds and properties kept independent and separate?

As stated by counsel for appellant, since early in the history of the building and loan associations, two distinct

views of the status of a borrowing member or stockholder have been recognized by the Courts of the various states. One line of cases held that a borrowing member pledging his stock continued to be a stockholder, and the indebtedness evidenced by his note was accompanied with whatever burden or profit might accrue proportionately to his membership or stock. The other line of cases held that borrowing from the association and investing in its stock were inconsistent, and upon borrowing with the stock as security, one ceased to be a stockholder and the relation of such borrower to the association was merely ·that of debtor and creditor.

The status of a borrowing stockholder of a building and loan association in this State was definitely settled in the case of *Bird v. Kendall,* 62 S. C., 178, at page 192, 40 S. E., 142, when the Court stated: "When a person subscribes for shares of stock and becomes a member of a building and loan association, and thereafter borrows money from the association, pledging his shares of stock to secure its payment, he thereby practically ceases to be a member of the association. The new relation between him and the association is that of debtor and creditor, and it can only recover from him the principal of the sum loaned, together with the legal rate of interest. There are *dicta* in some of our cases contrary to this statement of the law, but after mature deliberation, this Court has reached the conclusion just mentioned."

In the case of *Interstate Building & Loan Ass'n v. Holland,* 65 S. C., 448; 43 S. E., 978, 979, after citing the case of *Bird v. Kendall, supra,* and quoting therefrom the portion of the opinion in that case hereinabove quoted, the Court had this to say:

"Building now upon this settled view of the borrowing stockholder's relation to the association, some consistent rules of settlement should be formulated:

"First. The borrower should not have credited on his

loan such sums as were paid by way of admission fees, stock dues, fines, etc., while a nonborrowing member, and before the loan was created, since they were paid as a member of the association, according to its rules, and in no sense can they be considered as payments upon a loan not in existence. He should, in lieu of all such payments, have credit on his loan for the withdrawal value of his stock at the time of the loan, determined according to the rules of the association, in the association, in the absence of an agreement, just as if he had, in legal effect, made demand then for such withdrawal value. *Moore v. Southern Mut. Association,* 50 S. C., 89, 27 S. E., 543.

"Second. He should have credit on the loan for all payments thereafter made of stock, dues, interest, premiums, in whatever form or guise, or fines; all being treated as modes of payment as a borrower, to be credited as of the time of payment, with interest to be adjusted or calculated according to the rule of partial payments, known as the 'United States rule.'

"Third. No deductions from such payments should be allowed under any by-law providing, for example, that 'eight cents per month per share shall be set aside for expenses,' because, having, in contemplation of law, ceased to be a member of the association, he is not chargeable with its expenses.

"Fourth. For the same reason, he is not chargeable with any losses of the association, nor is he entitled to any share in the profits of the association.

"Fifth. He is liable for the sum loaned, with such interest as may be lawfully collected under the contract. * * * These rules are not intended to be exhaustive, but they are adequate for the disposition of all matters involved in this appeal." See, also, the cases of *Union B. & L. Ass'n v. McNally,* 96 S. C., 38; 79 S. E., 796, and *Yorkville B. & L. Ass'n v. Foster,* 132 S. C., 276, 129 S. E., 44.

In the case of *Huggin v. People's B. & L. Ass'n,* 165 S. C., 404; 163 S. E., 883, 884, in which all of the previous decisions, which has had placed upon it the imprimatur of granted appellant's counsel to review them, the Court adhered to the rule heretofore followed in this language: "Appellant's counsel asked the leave of the Court to review the line of cases in this State which hold that, when a member of a building and loan association borrows of the association, he ceases to be a member thereof, and the relation between him and the association is that of borrower and lender. This leave was granted, and counsel for appellant have presented a very strong argument in favor of overruling that line of cases. After consideration, the Court is not inclined to change a rule, or rather a line of decisions, which has had placed upon it the imprimature of jurists who have adorned the bench of South Carolina. This Court will adhere to the rule laid down in the cases of *Buist v. Bryan,* 44 S. C., 121; 21 S. E., 537; 29 L. R. A. 127; 51 Am. St. Rep., 787; *Bird v. Kendall,* 62 S. C., 178; 40 S. E., 142; *Interstate Building & Loan Association v. Holland,* 65 S. C., 448; 43 S. E., 978, and cases in harmony with them."

This rule was adhered to in the case of *Cohen v. Home Building & Loan Ass'n,* 174 S. C., 282; 177 S. E., 320.

There is only one corporation, and a debtor to the corporation is not concerned with the manner in which it divides its assets amongst its stockholders.

The order of the Circuit Court is reversed, and it is adjudged that appellant has the right to have his stock payments set off against his note. This in no wise conflicts with the general law that a stockholder is bound by the by-laws of the association in which he owns stock, if the controversy is between such stockholder as a stockholder and the association, or as between stockholders when such is their status, but when a stockholder ceases to occupy this relation, and the relationship becomes that of a debtor and

creditor, and when the by-laws conflict with the law as recognized in this state, then such by-laws are ineffectual to bind such debtor. Reversed.

MR. CHIEF JUSTICE STABLER and MESSRS. JUSTICES CARTER, BONHAM and FISHBURNE concur.