## BROWN v. WILCOX AND SAWYER.

1. INDORSEE OR USURIOUS NOTE. The indorsee of a promissory note who takes it with knowledge that it is tainted with usury, is not a *bona fide* assignee within the meaning of § 1792 of the Revision of 1860, and cannot recover the consideration paid for the same, less the principal, from the indorser.

2. SAME. When the first indorsee of a promissory note tainted with usury received it with knowledge of the usury, and delivered it to the maker upon the execution of a new note payable to himself, which included the whole usury previously reserved, which note he indorsed for a full and valuable consideration to another indorsee who had no knowledge of the usury, it was held that the remedy of the second indorsee was against his immediate indorser alone, and that he had no right of action against the indorser of the original note. LOWE, J., dissenting.

*Appeal from Dubuque District Court.*

MONDAY, DECEMBER 21.

PLAINTIFF seeks to recover of defendant (as a usurer), the full amount paid by him for certain notes, less the prin-

cipal money, as allowed by section 1792 of the Revision of 1860. As shown by the petition, the facts are, that in 1857, defendant loaned to T. S. & D. S. Wilson, $665.58 at 30 per cent interest, taking their notes therefor. They paid $200, the first note was surrendered and a new one taken from T. S. Wilson for $967.50, with 15 per cent. This was transferred to defendant, Sawyer, who took and surrendered it, as is alleged, without knowledge of the usury, and took two new notes for $500, and $467.50, payable to himself, which he transferred to plaintiff, who was in like manner ignorant of the illegality. To a suit brought on these notes, the plea of usury was interposed, and on the trial there was a recovery for $465.58. Plaintiff claims to recover the usury ($500) contained in said notes, and the costs in the case against Wilson.

Sawyer made default. Wilcox answers, alleging that Sawyer had full knowledge of the whole transaction, and knew that the notes were usurious; that he acted for defendant in getting the notes renewed; and further that defendant traded said notes to Sawyer for certain lands, the notes and lands being at the risk of each; that said Sawyer knew that said notes were founded upon a usurious contract and took them with the knowledge that the maker might plead usury. It is also averred that the lands conveyed by Sawyer were not worth $500; that he had no title to one hundred and sixty acres of the same, and that the consideration was therefore less than three hundred dollars. It is also denied that plaintiff had no notice of the usury of said notes.

A demurrer to this answer was overruled. Plaintiff excepted and appeals.

*B. W. Poor* for the appellant.

*Bissell & Shiras* for the appellee.

WRIGHT, J. — This case involves a construction of section 1792 of the Revision, which declares that "nothing in this act shall be so construed as to prevent the proper *bona fide* assignee of any usurious contract recovering against the usurer, the full amount of the consideration paid by him for such contract, less the amount of the principal money; but the same may be recovered of such usurer in the proper action, before any court having competent jurisdiction."

That Sawyer, under the facts disclosed in this answer, could not recover of defendant, in virtue of the provisions of this statute, we think is quite clear. He is certainly not a *bona fide* assignee. Taking the answer as true, he bought with full knowledge of the usury, and can claim no protection under the statute.

We remark also, that as the answer denies that plaintiff took the notes without knowledge of the usury, he occupies no better position. But suppose he acted or bought these notes in ignorance of the usurious taint, can he recover of Wilcox? It seems to the majority of the Court that plaintiff's remedy is against Sawyer alone, who had knowledge of the usury; took new notes including the whole usury previously reserved, and sold the same for a full and valuable consideration. Defendant never transferred these notes to Sawyer and never received anything for them.

Whether defendant as a usurer, could be made liable to any subsequent *bona fide* holder (supposing the original notes not to have been surrendered), for the amount paid by such holder to the assignee of the usurer, less the "principal money;" or in other words, whether his liability is measured by what he receives, and not by what his assignee may receive, is a question of some doubt under the statute, and one not necessary to determine under the facts disclosed by the pleadings in this case. Nor for the same

reason is it necessary to decide whether he is liable under the statute to any one but his immediate assignee.

We put the case upon the grounds above stated, and think the demurrer was properly overruled.

LOWE, J., *dissenting.*— To understand the ground of my non-concurrence in the opinion just announced, it will be necessary to state a little more in detail the facts of the case. On the first of June, 1858, the defendant, Wilcox, assigned to Sawyer, his co-defendant, a promissory note over due and largely tainted with usury, for $967.50, of which he was the payee, having taken the same from the maker thereof for a loan of money. Afterwards Sawyer, the assignee, surrendered said note to the maker (Wilson) and took from him two new notes in his own name, for the same amount in the aggregate, one for the sum of $467.50 at three months; the other for $500 at six months. These notes before their maturity, Sawyer assigned for full value to the plaintiff without any notice of the usury as is alleged. Upon these notes Brown, the assignee of Sawyer, brought suit against the maker and recovered only $465.58 under the defense of usury with costs taxed against him for $12.64. These costs and the usury of $500 the plaintiff now seeks to recover of the defendants. Sawyer makes no defense. Wilcox answers, denying all the allegations in the petition, but further sets up a special defense to the effect that his co-defendant, Sawyer, was fully cognizant of the usurious interest reserved in the note which he had assigned to him; that being possessed of this knowledge he nevertheless offered to exchange some wild lands which he claimed to own in the counties of Tama and Fayette for said note. This offer was accepted by Wilcox, and the trade or exchange was effected about the 14th of June, 1860. In doing so it was agreed that Sawyer should take the note, running all risk of the defense of usury

being pleaded, and of the ability of the maker to pay the same ; while Wilcox should take a conveyance of the land, running all risk of the title and the value thereof. It is further alleged that the land so conveyed was not worth over $500, and that the said Sawyer had no title to one hundred and sixty acres of said land, thereby reducing the consideration to less than three hundred dollars, &c.

This special transaction between the defendants, the plaintiff supposed was no defense in law to his right to recover against the usurer, as expressly secured to him under the provisions of section 1792 of the Revision of 1860, and therefore he demurred to the same. The demurrer was overruled by the Court below. This ruling is sustained in the majority opinion of this Court. That is to say, this exchange of land by the defendant, Sawyer, to his co-defendant, Wilcox, for a note known to be usurious, was a good defense against the plaintiff who is seeking to recover against the usurer the consideration paid by him for the claim, less the amount of the principal sum. The argument for thus holding, is, if I understand it, that inasmuch as Sawyer, the first assignee of the note knew of its usurious infirmity, and had it renewed in his own name, that he thereby became responsible to plaintiff, his assignee, and not to Wilcox, between whom and the plaintiff there was no privity of contract.

This view of the question is by no means satisfactory to my mind. The facts stated do not in the sense or meaning of the law make Sawyer a usurer, and therefore as such he cannot be made liable under section 1792 as aforesaid. It is possible that he may have transferred the note under circumstances that would render him liable upon general principles. But it would not follow from this that the plaintiff may not insist upon his statutory remedy against the usurer. In my judgment, the statute absolutely fixes and settles in clear and unambiguous terms the

respective rights and liabilities of the parties to a contract infected with usury. And when an innocent holder of a note suffers a loss by a plea of usury, his remedy under the statute is alone against the usurer who is thus made liable perhaps as a sort of punishment for his violation of the usury laws. And his liability as such arises out of the provisions of the law, and not from any required privity of contract between him and the plaintiff.

In the case at bar, Wilcox alone was the usurer in this transaction, and there is no more reason that he should be shielded from the consequences of his unlawful acts, because of no privity between him and a subsequent *bona fide* assignee of a note, than that the maker of the note should be concluded from setting up the defense of usury, because by some change of the parties to the paper, the privity of contract between him and the usurer, has been shifted so as to exist between him and some other party. The doctrine upon this subject may be simply stated as follows:

The surrender of a usurious note and taking from the maker thereof a new note without paying the usury, or renewing it in the name of some other payee, does not have the effect to prevent the maker from setting up the defense of usury. The law tolerates no such subterfuge in order to evade its authority, nor will a resort to any of these devices shield the usurer from his liability under section 1792 of the Revision to pay a *bona fide* assignee the full amount of the consideration paid by him for said contract, less the amount of the principal sum. The remedy of such innocent assignee is against the usurer alone, and not against another assignee who may have taken the note with notice of usury. Such notice does not make him in contemplation of law a usurer, and the last innocent assignee cannot look to him under the provisions of said section. Hence it follows that the facts set up in the

special plea, to which the demurrer was overruled, constituted no defense to the plaintiff's action, and the demurrer should, as I think, have been sustained.

The counsel for the appellant filed a petition for a rehearing, which was considered by the Court and overruled.