E. C. SPINNEY v. ELIZABETH MILLER, CHARLES K. MILLER, HOLLIDAY BROS. *et al.*, Appellants.

**Building and Loan Association Mortgage:** DEFENSES. Where a mortgage is executed in Iowa to a foreign loan association, the fact that the statutory requirements of the state had not been observed when the stock was subscribed for is not sufficient to destroy the lien under the mortgage.

**SAME:** *Estoppel.* A mortgagor who has received and retains benefits under a mortgage executed to a foreign loan association cannot assert its invalidity because of failure of such association to comply with the statutes prescribing terms on which foreign corporations may do business in the state.

Stipulation of negotiability: *Not binding on receiver.* A stipulation in a mortgage to a building association that it is to be non-negotiable and uncollectible by any other person than the association is, notwithstanding, transferrable under the statute and is not operative against an assignment made by a receiver of the association through an order of court.

Assumer of Mortgage: *Defense of usury.* A purchaser of mortgaged premises, assuming payment of the mortgage. with full knowledge of the payments required, cannot set up the defense of usury.

**Settlement with Building and Loan Company:** insolvency: *Interest.* In a suit by an insolvent building association for settlement with borrowing members the latter are entitled to a credit for premiums paid by them, but no credit should be allowed for interest and for dues paid on stock, as interest cannot be credited in reduction of principal, and such stock has no withdrawal value until the insolvent estate is settled.

Same. A settlement with borrowers, prescribed by statute for a solvent building association, is not applicable when the association becomes insolvent.

*Law of sister state.* The law as to the settlement of a foreign building association with its borrowers in the state of its domicile not being shown, it will be presumed to be the same as the law of Iowa.

Federal court adjudication. The method prescribed by the Federal court appointing a receiver for settling with borrowing members is not conclusive on a borrower in a subsequent suit to foreclose a mortgage given by him, where the issue as to the amount paid on such mortgage was not before the court, and the borrower could not have presented it if he would.

*Same.* Where stockholders of a building association are not parties individually to an action in the Federal court, the method prescribed by it for appointing a receiver for settling with borrowing members is not binding on them.

*Appeal from Polk District Court.*—Hon. Charles A. Bishop, Judge.

Friday, May 24, 1901.

This is an action in equity to foreclose a mortgage on real estate in the city of Des Moines. The issues presented

by the answer will be stated in the opinion. There was a decree for plaintiff, and defendants Holliday Bros., W. R. Holliday and O. E. Holliday appeal.—*Modified.*

*C. E. Hunn* for appellant.

*Dudley & Coffin* for appellee.

Waterman, J.—The mortgage in suit was made by Elizabeth Miller and Charles K. Miller, her husband, to the National Home Building & Loan Association of Blooming-ton, Ill. The instrument contained this clause: "It is expressly agreed that this mortgage is nonnegotiable, and is uncollectible in the hands of any other person than said association or its successors, or its duly authorized attorney or agents." The first point sought to be made by defendants, is that because of this provision, the mortgage was not assignable, and therefore plaintiff can maintain no action upon it. Plaintiff's title was acquired by assignment from a receiver duly appointed for said corporation upon a showing of its insolvency. The sale by him, so far as appears, was under order or authority of court. Notwithstanding this provision, the instrument was transferable under our statutes (Code, section 3046), subject, of course, to any defenses that would have been good as against the assignor. See, also, *Mershon v. Insurance Co.*, 34 Iowa, 87. Furthermore, it is universally held that a provision restraining the assignment of such an instrument is not operative against an assignment effected by law or through an order of court. Where it is given force, it is restricted to voluntary alienation. 4 Kent, Commentaries, 128.

II. Another defense is that the National Home Building & Loan Association had not complied with the laws of this sate at the time the loan was made, and therefore neither it nor its assignee may enforce the contract. There are two grounds, upon either of which this contention may be

successfully met: (1) The record does not show that the statutes were not complied with when the mortgage was made. The fact that the statutory requirements had not been observed when the stock was subscribed for is not enough to destroy the lien under the mortgage. (2) Whatever the right of the state might be in case of a failure on the part of a foreign corporation to comply with the statutes prescribing terms upon which a foreign corporation may do business here, the mortgagor, who has received and retains benefits under the contract, cannot be heard to assert its invalidity. *Beach v. Wakefield,* 107 Iowa, 567; *Washburn Mill Co. v. Bartlett,* 3 N. D. 138 (54 N. W. Rep. 544); *Wright v. Lee,* 2 S. D. 596 (51 N. W. Rep. 706).

III. Next, usury is set up as a defense. Holliday Bros., who are the appellants, purchased the land from mortgagor, and assumed payment of the mortgage debt. They had full knowledge of the payments required of them, for they were stipulated in the mortgage. Under these circumstances, they cannot set up the defense of usury. *Institution v. Copeland,* 71 Iowa, 67, and cases cited therein. The assignee, whose right is saved to plead usury under section 3042, Code, is one who takes in good faith; that is, with no knowledge of the taint. *Brown v. Wilcox,* 15 Iowa, 414.

IV. Some further facts must be stated in order to make clear the remaining defenses. As we have said, the National Home Building & Loan Association was an Illinois corporation, and it had its main office in the city of Bloomington, in that state. Its articles of incorporation provided that all applications for loans should be made to, and acted upon by, the board of directors in Bloomington; that all moneys due the association should be due and payable in that city. Provision was, however, made for a local advisory board, and such a board was formed and existed in the city of Des Moines. It was provided that said

local board might elect a president, collector, attorney, three appraisers, and three trustees. This board was to "co-operate with the home office in the management of the business of the locality." The collector was required to give bond, and was allowed as compensation a per cent. on dues collected. It was provided in the articles of incorporation that such collector should be the agent of the local board, and not of the association. To obtain the loan, Elizabeth Miller bid a premium of $780, which was divided into 84 monthly installments. The payments required of her monthly under her contract were: Dues, $6.60; interest, $6; and premium, $9.28. It was admitted on the trial there had been paid in all on this loan:

| | | |
|---|---:|---:|
| Installments on stock | $ 382 | 80 |
| Interest | 336 | 00 |
| Premiums | 519 | 68 |
| Total | $1,238 | 48 |

The decree of the trial court found there was still due on this mortgage the sum of $1,267.50. A question presented, and one which we now take up, is the perplexing and much-disputed one of the application of payments in cases of this kind. The trial court appears to have given credit on the loan for interest paid, but not for installments on stock or premium. As we have before said, the association is insolvent and in the hands of a receiver. Appellee, in support of the method pursued by the trial court, insists that this was an Illinois contract, and the manner of accounting followed was that prescribed by the statutes of Illinois. The provision thus relied upon, and which was offered in evidence relates to loans made by building and loan associations, and to settlements with borrowers before the maturity of their stock, and, so far as material, is to the effect that, where the premium is paid in installments, no part of it shall be refunded on such settlement. If we were to concede the law of Illinois to be controlling, still we think this provision cannot aid plaintiff. The settlement there provided

for is evidently with solvent associations. It conforms to the requirements of our own statutes as they have been construed by this court. *Briggs v. Association,* 114 Iowa, 232. But, as will be made manifest further on in this opinion, a different method of settlement must be made in case the association is insolvent. No decision of the supreme court of Illinois has been cited which holds that the distinction recognized by this court does not exist there. In other words, the rule as to a settlement with an insolvent corporation of this kind in Illinois not being shown, the law of that state will be presumed the same as our own. *Sieverts v. Association,* 95 Iowa, 710, and cases therein cited.

But it is further urged by appellee that the method of accounting pursued by the trial court was that fixed and ordered by the federal courts in which the receivership was pending, and that the trial court was bound thereby. The bill for a receiver was first filed in the circuit court of the United States for the Southern district of Illinois, the National Home Building & Loan Association being the sole defendant, and upon a hearing the corporation was found to be insolvent, and a receiver was appointed. Thereafter on the application of the receiver for instructions as to how to proceed in settling with borrowing members, the court prescribed a plan, directing him to collect principal and interest at 5 per cent. from the date of his appointment, and dues and premiums delinquent at that time, leaving the stockholder a claim on his stock for such dues and premiums, but giving him no credit on his loan for either. Another action was brought with like purpose in the district court of the United States in and for the Southern district of Iowa, and a similar decree, containing like instructions, was obtained. The method prescribed by these two courts for settling with borrowing members was the same as that adopted by the trial court, and it is thought the instructions given by the federal courts were conclusive upon the borrow-

ers. There are two reasons why this is not so. The stockholders were not parties, individually, to the actions in the federal courts. They were there by representation only. The issue as to the amount paid on this mortgage was not before either of those tribunals. Defendants could not have presented that question if they would. Therefore they had no hearing, or opportunity for a hearing, on the question in issue here. While the corporation represents the stockholders, and the latter were in court for some purposes in the receivership proceedings, the court in that action had no jurisdiction to adjudicate the question of their ultimate liability. *Great Western Telegraph Co. v. Purdy,* 162 U. S. 329 (16 Sup. Ct. Rep. 810, 40 L. Ed. 986). After the appointment of a receiver of an insolvent corporation, the same defense is open to debtors as against him, that would have been available against the corporation. High, Receivers, sections 316-318. Where the receiver makes assessments on premium notes given the corporation, his action is purely ministerial, and so is that of the court in approving such assessments, as the issue of the debtor's liability can be settled only in an action against him. High, Receivers, section 330; *Embree v. Shideler,* 36 Ind. 423. See, also, as bearing on this point, *LaMar Ins. Co. v. Hildreth,* 55 Iowa, 248; *Parker v. Lamb & Sons,* 99 Iowa, 265.

Next, it is to be said that this order was but a direction to the receiver how to proceed—that is, in what way to keep his accounts—and the action here is not by the receiver, but by one who has acquired the title of the association to the mortgage. It may be said that a consistent plan is necessary in order to enable the receiver to settle the estate. But substantive right must not be made to yield to matters of convenience. Furthermore, the difficulty, if any, is but in a matter of bookkeeping. What a debtor gets in the way of credit on his mortgage should be deducted from the value of his stock. If he claims to have made a payment on his mort-

gage, we do not understand how he can be denied a proper credit without having had his day in court on that issue.

We come now to the matter of accounting. The courts have mainly to deal with these associations in connection with the foreclosure of mortgages, and in most of such cases the corporation is solvent. Sometimes, however, they get into court for the purpose of having their business wound up and their assets distributed. This is usually in cases of insolvency. Different rules apply in the two instances, necessitated by the differing circumstances. Where the association is solvent, and seeking foreclosure of a mortgage, the payment of the mortgage debt, and the withdrawal of, or settlement for, the shares, are contemporaneous acts. In such a case the withdrawing shareholder is entitled to have credited on his stock the dues, but not the premiums paid, for the latter go into the profit fund, and are to be shared equally by all members, whether borrowers or nonborrowers. He gets *pro rata* his share of this profit fund, and this share, added to his dues, fixes the withdrawal value of his stock. See *Briggs v. Association,* 114 Iowa, 232, in which this question is fully discussed, and the method of accounting explained. But, where the association is insolvent, a somewhat different course must be pursued. The actual value of the shares is not ascertainable before all the assets are collected and all debts paid. Until the affairs of the corporation are fully settled, the shareholders may not withdraw. Manifestly there cannot be an immediate settlement of installments paid on stock. As to premiums which have been paid, the situation is different. The association is then unable to perform the contract for which the premium was bid. There is no reason for assuming that any premium would have been given for anything less than the performance in full of the original contract. Therefore the borrower is entitled to a credit on his debts of the premium paid; and, as said, he should not have credit for dues, because his stock has no withdrawal value until the insolvent estate is settled. The courts are not harmonious as to the

method of stating accounts in cases like this. Some hold the borrower is to be charged with the amount of money received, and to have credit for all payments made, whether of dues, interest, or premium. *Association v. Buck,* 64 Md. 338 (1 Atl. Rep. 561). For further authorities in support of this rule, see 4 Am. & Eng. Enc. Law, 1081. It is manifest, under this doctrine, the borrowing member, who has drawn out in advance the value of his shares, would have much the advantage of the nonborrowing shareholder. Another rule is to credit on the loan only interest and any sums paid directly thereon. See Am. & Eng. Enc. Law, 1081, for cases sustaining this theory. This is the rule which the court practically adopted in *Wilcoxen v. Smith,* 107 Iowa, 555, in which it was held that the mortgagor was to be allowed a credit for all payments made, but that an equity was to be preserved between the borrowing and nonborrowing members. A credit for the premium paid was, however, allowed. Something is said in that case about allowing as a credit the actual value of the shares, if that value could be ascertained. But it was left an open question whether such present worth could be determined. In the case at bar the value cannot now be fixed, so far as the record discloses. We take the *Wilcoxen Case* as the foundation upon which to rest the theory of settlement which should be made in cases of this kind. It is apparent the mortgagor here bears a dual relation to the association. He is a shareholder and a debtor. Let us separate these characters, and see what was his duty in each. As a shareholder, he had to pay fines and dues. These inured to the value of his stock, and were to be settled for by the association only when the stock was withdrawn. So far, then as these payments are concerned, he has a claim on his stock against the association. The amount of this claim, however, cannot be known until all assets of the association have been collected and all debts paid. As a borrower, the mortgagor had to pay premium and interest. The interest was paid for the use of the money. It cannot be credited

in reduction of principal. The premium, also, was paid for the use of the money, but it was in the nature of a bonus given for a favorable contract, which the association is unable to perform. It cannot be apportioned, because, as already suggested, the borrower might be willing to pay a large premium for the privilege of keeping the money until his stock should have matured, thus canceling his debt, yet he might not have consented to pay any part of such premium for being allowed to keep the money for a short time, and then repaying the loan in full. For these reasons, we think the premium paid should be credited to defendant on the principal of the loan. In other words, as to payments which all shareholders had to make in order to retain their shares, the borrowing shareholder stands on the same footing as any other, and must look to the settlement on his stock for returns. He does not make these payments on his debt, but on his stock. He can have a credit on his debt only for those sums paid thereon; that is, which he would not have been obliged to pay if he were not a borrower. *Hale v. Kline,* 113 Iowa, 523. Our conclusions find support, also, in the following cases: *Rogers v. Hargo* 92 Tenn. Sup. 35 (20 S. W. Rep. 430); *Towle v. Society* (C. C.) (61 Fed. Rep. 446); *Strohen v. Association,* 115 Pa. Sup. 273 (8 Atl. Rep. 843); *Curtis v. Association,* 69 Conn. 6 (36 Atl. Rep. 1023); *Knutson v. Association,* 67 Minn. 201 (69 N. W. Rep. 889); *Hale v Phillips,* 68 Ark. 382 (59 S. W. Rep. 35). Rules very different from this may be found in the books. We need not call attention to the cases. The doctrine we announce is just, and sustained by about as many authorities as support any one of the several other methods that obtain elsewhere. If defendants here suffer a hardship, it is not because of the law, but on account of the fact that they were members of a badly-managed institution. We think defendants should have had credit on the principal of their indebtedness for the amount of premiums paid by them and their grantor, $519.68, and as thus modified the decree of the trial court is AFFIRMED.