HARRY C. BRIGGS *et al.,* Appellants, v. IOWA SAVINGS LOAN ASSOCIATION.

Payment: APPLICATION: *Homestead and other securities.* Where a husband and wife mortgage their homestead to a loan association, the husband, in addition to the mortgage, pledging his shares of stock as security, and subsequently such husband pledges such stock to secure a personal loan, payments made by him on the stock, without suggestion as to their application, should be first applied on the debt against the homestead.

Building and Loan Mortgage:  FORECLOSURE.  Under Code, section
1898. providing that on foreclosure of a building and loan mort-
gage the borrower shall be charged with the full amount of the
loan made to him, and he shall be credited with the same value
of his pledged shares as if he had voluntarily withdrawn the
same, a borrower is not entitled to the withdrawal value of his
shares, and also the dues and premiums paid, since the premiums
form part of the profit fund, and go to increase the value of all
shares, whether held by borrowers or non-borrowers.

USURY.  Where a borrowing member of a building and loan associa-
tion pays only 12 per cent interest, the contract is not usurious
because the creditor may have secured more by exacting month-
ly payments of interest.

*Appeal from Polk District Court.*—HON. C. A. BISHOP,
Judge.

FRIDAY, MAY 24, 1901.

ACTION in equity to secure an accounting as to the
amount due on a mortgage given to defendant, and to effect
redemption therefrom.  By a cross-bill defendant sought to
forclose its mortgage.  From a decree fixing the amount
due and foreclosing the mortgage, plaintiffs appeal.—*Modi-
fied.*

*Dudley & Coffin* for appellants.

*Bailey, Ballreich & Preston* for appellee.

WATERMAN, J.—Appellants claim the loan was usuri-
ous, and the principal question involved is the same as was
determined in the case of *Edworthy* against this same de-
fendant, decided at the present term (113 Iowa), the
two actions being tried together below.  Following
our holding in that case, the curative act (chapter
48, Acts Twenty-seventh General Assembly), must
be held to have conferred a right on defendant which was un-
affected by the repeal of such statute.

II.  There are, however, two questions involved pe-
culiar to this case.  Briggs and his wife made a mortgage

on their homestead to secure this loan from the association, and the former, in addition to the mortgage, pledged his shares of stock as security. Afterwards Briggs made a personal loan from the association, for the security of which he also pledged such shares. The court, in finding the amount due, deducted "from the amount of the real-estate loan the amount paid in on the shares of stock, and the net dividends credited thereto, with interest on the amount from the date of the first failure to pay the monthly installments due, and adding thereto the amount of the stock loan," etc. It is apparent that this method of computation includes the amount of the personal loan in the foreclosure.

2      Plaintiffs claim the total credit should have been given on the mortgage debt so as to relieve the homestead, and that judgment should have been rendered in this action only for the balance due on the mortgage debt after such credit was deducted. This would leave the personal debt wholly unpaid; for the total withdrawal value of the shares was $710.02, as found by the trial court, and the mortgage debt, with delinquent dues, interest, and premium, was $1,196 on June 15, 1898. The payments made by Briggs were on his stock. He suggested no application of them on either loan, and the creditor made none. Under these circumstances, the money should now be applied, first, upon the debt against the homestead. *Bank v. Holingsworth,* 78 Iowa, 575. This would leave the mortgage debt thus:

Principal ............................................................$1,000 00
Delinquent interest and premium due June 15, 1898.........  121 00
Dues and fines to same date...............................   75 00

    Total.............................................  .............$1,196 00
Deduct value of shares....................................  710 02

    Balance......................................  ....................$  485 98
To this should be added interest at 8 per cent. from June
    15, 1898, to date of decree, October 22d, same year........   13.72

    Balance due on mortgage debt on date last named...$  499 70

III.   This brings us to the method of accounting by the association as to the credit to be allowed upon the shares. This matter is regulated by statute.   Code, section 1898, provides: "In case of foreclosure, the borrower shall be charged with the full amount of the loan made to him together with dues, interest, premium and fines for which he is delinquent, and he shall be credited with the same value of his pledged shares as if he had voluntarily withdrawn the same."   And that the judgment shall not exceed "the net amount of principal actually received, with interest thereon at a rate not greater than 12 per cent. per annum."   These provisions are to govern, "any agreement to the contrary notwithstanding." Under this statute, plaintiffs claim they are entitled to the withdrawal value of their shares, and aslo to dues and premium paid.   This, as we have lately held, is not so.  *Iowa Deposit & Loan Co. v. Timme,* (Iowa), 85 N. W. Rep. 826.   Nor are the premiums as such to be returned. *Spinney v. Miller,* 114 Iowa, 210.  Premiums form a part of the profit fund when paid, and go to increase the value of all shares, whether held by borrowers or nonborrowers. Each shareholder is entitled to his proportionate part, and not to the amount which he has paid in.   If each borrower was entiled to a credit on his loan of the total premium paid by him, the nonborrower would be discriminated against.   The borrower would get the greater share of the profits, and his stock would mature long before that of the nonborrowing shareholder holding stock of the same series.   Indeed, there would be little object in the association taking a premium if it all went to the credit of the person who paid it.   In estimating the withdrawal value or shares, the profits are divided, and thus the borrower gets the benefit of premiums paid.   This was the method of calculation pursued in *Iowa Sav. Loan Ass'n v. Heidt,* 107 Iowa, 297.   It is true the opinion in that case speaks of adding premiums, dividends, and dues together, and deducting their sum from the face

value of the note, in order to find the amount due. But the word "premiums" was inadvertently used in that connection. The debtor in that case was allowed dividends, i. e., his share of the profit fund, but was not allowed any further credit on account of premiums paid. See *Spinney v. Miller, supra,* for something on this point. It may be well to add in this connection, that where the premium is a lump sum deducted from the amount of the loan at the time it is made, a credit doubtless should be given for the unearned part. 4 Am. & Eng. Enc. Law, 1088, and cases cited. The trial court found the withdrawal value of plaintiff's shares according to the rule stated and gave credit therefor. This was all they were entitled to. It is not out of place to say the decree in this case was rendered before the enactment of chapter 69, Acts Twenty-eighth General Assembly. What change, if any, in the method of accounting, is effected by section 6 of that act, we are not now called upon to determine.

IV. Objection is made, as we understand, to the monthly payments of interest, it being thought that for this reason the amount of the judgment exceeds the net principal received, with 12 per cent. interest thereon. A contract is not usurious because of making the maximum rate of interest payable semi-annually (*Hawley v. Howell,* 60 Iowa, 80), nor if it is paid quarterly (*Ragan v. Day,* 46 Iowa, 239). On principle, this would be true of monthly payments. The test of usury is the one to apply to determine whether the statutory limit of the judgment has been exceeded. The question is not what the creditor made, but what the debtor was forced to pay. If the debtor paid only 12 per cent. simple interest—and so far as we can determine that is all that was paid here—it makes no difference that the creditor may have got more than this by exacting frequent payments. With the modification we have mentioned, which will slightly reduce the attorney's fee allowed, the judgment is AFFIRMED.