Iowa Deposit and Loan Company, Appellant, v. George W. Matthews, et al.

Building and loan mortgages: FORECLOSURE: COMPUTATION: JUDGMENT. In construing Code, section 1898, relative to the foreclosure of a building and loan association mortgage, it is held that in computing the sum for which judgment should be entered, the borrower should be charged with the net amount of the loan received by him, together with twelve per cent. interest per annum thereon, and he should be credited with the full amount paid by him as dues, fees, fines, premiums, and interest, and judgment should be rendered for the difference, if any; but if the payments exceed the net amount of the loan, and interest then the association is not entitled to judgment. Weaver, J., dissenting.

*Appeal from Taylor District Court.*— Hon. R. L. Parrish, Judge.

Friday, March 10, 1905.

The plaintiff is a building and loan association, and brings this suit in equity to foreclose a mortgage executed to it by Matthews and wife to secure a loan of $500 made to Matthews. There was a judgment for the defendants, and the plaintiff appeals.

*Geo. E. Hise* and *Flick & Jackson*, for appellant.

*Haddock & Sons,* for appellees.

SHER'WIN, C. J.— At the time the loan was made, Matthews was the holder of five shares of the capital stock of the plaintiff, upon which he had agreed to pay the sum of sixty cents per share per month. He executed his note for $500, and agreed therein to pay the monthly dues on his stock, $3 per month as premium, and $2.50 per month as interest. When suit was commenced, in March, 1901, the defendants were delinquent $27 for nine months' dues, $27 for nine months' premium, and $22.50 for nine months' interest, making the total delinquencies $83.25. The withdrawal value of the stock was then $380.33.

The plaintiff's claim against the defendant was stated thus:

Amount of the loan............................ $500 00
Delinquent dues ............................ 27 00
    "       premium ........................ 27 00
    "       interest ........................ 22 50
    "       fines ............................ 6 75
                                            _____
    Loan and delinquencies.................. $583 25
Withdrawal value of stock.................... 380 33
                                            _____
    Balance due the plaintiff................ $202.92

This statement of account is in exact accord with a provision of the statute, Code, section 1898, which, so far as material to the question under consideration, is as follows:

In case of foreclosure the borrower shall be charged with the full amount of the loan made to him, together with the dues, interest, premium, and fines, for which he shall be delinquent, and he shall be credited with the same value of his pledge shares as if he had voluntary withdrawn the same. In the event judgment is obtained against a borrower of a building and loan association, no greater recovery

shall be had than the net amount of principal actually received, with interest thereon at a rate not greater than twelve per centum on the amount of loan actually received by, and paid to borrower with statutory attorney's fees; no evasion of this provision shall be had by means of any dues, membership fees, premiums, fines, forfeitures or other charges, any agreement to the contrary notwithstanding.

The balance shown by the appellant's statement of account would be the amount it should recover, were it not for the provision of the section limiting the amount of recovery where a judgment is obtained. It is a fundamental rule of construction that a statute on a particular subject must be construed as a whole, and that effect must be given to all of the language thereof, if possible. The first provision of the statute under consideration relates alone to the foreclosure of the mortgage executed by the borrowing stockholder, and provides the method of determining the amount with which he may be charged in the event of a foreclosure of the mortgage, and were it not for the second provision, which limits the amount of the judgment which may be rendered against him upon a foreclosure, there would be no difficulty in determining the amount which the plaintiff would be entitled to recover in any given case. But this clause of the statute expressly limits the amount which may be recovered, in the event the foreclosure proceeds to a judgment, to the net amount of the principal actually received, with interest thereon at twelve per cent. per annum; and the further provision is, in effect, that, in determining whether the rate of interest which has been paid or will be paid by the borrower in the event of a judgment against him, all payments made to the association by him shall be considered — that it, the sum total paid by him in dues, premiums, interests, fines, forfeitures, or other charges — shall enter into the computation in determining the rate of interest paid. When, therefore, a foreclosure proceeds to a judgment, the first requisite under this clause of the statute is to ascertain the net amount

of the principal actually received by the borrower, and what the interest thereon would be up to the date of the judgment, at twelve per cent. per annum, for by the terms of the statute the association can by no possibility recover a greater sum than those two items aggregate.

The next inquiry is to determine the total amount paid by the borrower to the association in connection with the loan, and in determining this, where a charge is made by the association for delinquencies under the first clause of the statute, it is manifest that the charge for such delinquencies must be considered as an actual payment, because, in the event of a judgment against the borrower, it would amount to the same thing. Having determined these two amounts — that is, the total amount of the principal received and interest thereon at twelve per cent., and the total amount of the payments actually made and delinquencies charged — the next step is purely mathematical. If the latter amount equals or exceeds the former, the statutory limit has been reached, and the plaintiff is not entitled to a judgment for more; but if the latter amount does not equal the former, the plaintiff may recover the difference, if it is due it under its contract with the borrower. An illustration, with the figures in this case, may be of assistance in making clear our meaning. The net amount of the loan actually received by the defendants, as shown by the record, was $467.45. Interest on this sum at the time of the trial, as computed by counsel, was $570.07. The total of the two sums is $1,037.52, which represents the limit of plaintiff's recovery under the statute. The defendants have paid to the association, in dues, interest, and premiums, the aggregate sum of $745.50, and in the statement of plaintiff's account, as we have heretofore seen, they are chargeable with the further sum of $83.25 for delinquencies, which sum, added to the amount already paid, makes a total sum paid and charged on account of the items enumerated by the statute of $837.75, which sum represents the exact amount

that the defendants would have paid had there been no delinquencies. It is $199.77 less than the aggregate amount of the net principal received, with twelve per .cent. interest thereon, and hence the statutory limit has not been exceeded by the payments made in this case. It must be borne in mind that the computation under the last clause of the statute is for the purpose only of ascertaining the limit of the plaintiff's judgment. Returning again to the plaintiff's statement of account under the first clause of the statute, we find that it claims $202.92, which is $3.15 in excess of the amount which it may recover.

This conclusion gives force and effect to both provisions of the statute, and is not inconsistent with either. The statute gives to associations of this kind the right to exact a greater rate of interest than is allowed to other lenders; it permits them to assess and collect from members such dues, membership fees, fines, premiums, and interest on loans as may be authorized by their articles of incorporation and by-laws, and expressly says that the same shall not be held to be usurious. But an interest limitation is also fixed, beyond which the association may not go, and which the courts shall not permit it to evade by any of the means named; the right, however, to assess and collect up to this point is unlimited, if the articles so provide.

The plaintiff's claim was founded upon the provisions of section 1898, and the proper construction of the limitation provision thereof seems to have been the only question before the trial court. We will not therefore consider the question, suggested in argument here, that its application in this case will interfere with vested rights.

In *Bacon v. Iowa Savings & Loan Ass'n,* 121 Iowa, 449, the proper construction of the last clause of the statute under consideration was not argued. On the contrary, it was contended that it was not applicable to that case, and the computation contended for by the appellant therein, under the limitation clause, was not controverted. The rule there

announced for ascertaining the rate of interest paid, so far as it goes, is in harmony with our holding here, although, in the discussion of the particular facts involved there, the opinion seems to limit the computation to the interest and premium paid and delinquent, instead of taking into consideration all payments. Such was not the intention, however.

In *Briggs v. Iowa S. & L. Ass'n*, 114 Iowa, 232, the question under consideration was not directly involved. It was there claimed that the plaintiffs were entitled to the withdrawal value of their shares, and also to dues and premiums paid, and we held that they were not entitled to credit for such items, following the holding in *Iowa Deposit & Loan Co. v. Timme* (Iowa), 85 N. W. Rep. 820, and *Spinney v. Miller*, 114 Iowa, 210. To the same effect is the holding in *Iowa B. & L. Ass'n v. Vogl*, 115 Iowa, 59.

Nor do we now hold that the borrower is entitled to them as distinctive credits, or at all, unless the sum total of his payments shall exceed the amount of principal actually accrued and the statutory interest, in which event he is entitled to have deducted only the excess over such amount. If the total amount paid by him does not exceed this limit, he is entitled to no reduction, and consequently to no credit for such items.

The difference between the face of the loan and the amount actually received by the defendants seems to have been deducted for the expense of closing the loan and for the advance payment of dues, and these charges, it is contended, are allowed by the statute, and by the contract between the parties; and this is true, except when it is necessary to determine whether excessive interest has been paid, in which event the statute expressly says that there shall be no evasion of the rule by means of any charges, and interest shall be computed " on the net amount of loan actually received by and paid to borrower."

In determining whether the interest limit has been ex-

ceeded, the rule of partial payments adopted in *Hunter v. Doolittle,* 3 G. Greene, 76 (54 Am. Dec. 489), and in *Smith, Twogood & Co. v. Coopers & Clark,* 9 Iowa, 376, should not obtain. Section 1898 expressly provides that monthly payments of interest, dues, and premiums may be made, and the limitation provision does not, in terms or by implication, say that they shall be treated as partial payments. .

In determining whether an excess of interest has been paid, we are not dealing with specific payments which have been made upon the loan, as would be the case were we ascertaining the amount due upon an ordinary promissory note. The statute fixes the borrower's credits in cases of foreclosure, and, as we have seen, these are the only credits to which he is entitled, unless the gross amount paid by him gives the association more than twelve per cent. on his loan, and this is to be determined at the time the judgment is rendered. As we have heretofore said herein, and held in other cases, the dues, premiums, etc., are not to be treated as credits to which the borrower is entitled in the settlement of his loan; and, if this be true, they certainly cannot be treated as partial payments, and credits be given therefor on the principal debt for the purpose of ascertaining the per cent. of interest actually paid.

Furthermore, when the borrower pays according to the terms of his contract, he receives the benefit of the money so paid in the increased withdrawal value of his stock; and if, when judgment is rendered, he may have a part of such payments applied on his principal debt as of the date when made, he receives interest on money which has been applied to reduce such debt. Of course, this result would not obtain if the withdrawal value of his stock was not enhanced by the earnings of the money so paid. *Iowa Deposit Co. v. Timme, supra; Bacon v. Association, supra;* Eubbich on Building Associations, section 477; *Seibel v. Ass'n,* 43 Ohio St. 371 (2 N. E. Rep. 417); *Tilley v. Ass'n* (C. C.), 52 Fed. 618; *Reeve v. Ass'n,* 56 Ark. 335 (19 S. W. Rep. 917; 18 L. R.

A. 129); Thompson on Building Associations, 429, 545; *Briggs v. Ass'n,* 114 Iowa, 232; *Hale v. Kline,* 113 Iowa, 523.

The case is reversed, and remanded for a decree in harmony with this opinion, or the plaintiff may, if it so elects, have a decree in this court.— *Reversed.*

WEAVER, J. (dissenting).— The statute in unequivocal language, provides that in actions upon building and loan contracts no greater recovery shall be had against the borrower " than the net amount actually received with interest thereon at a rate not greater than twelve per centum per annum on the amount of loan actually received by and paid to the borrower with statutory attorney's fees. No evasion of this provision shall be had by means of any dues, membership fees, premiums, fines, forfeitures or other charges, any agreement to the contrary notwithstanding." Observing its terms, we' have the simple question whether the payments of all kinds made by the borrower to the association equal or exceed a sum which would be sufficient to return to such association the money actually loaned by it, with interest at twelve per cent. per annum. If so, no further recovery can be had, notwithstanding any stipulation in the contract to the contrary; but if insufficient, the association may recover all the various installments and charges provided for in the contract up, to, but not beyond, the limit thus fixed. In short, the statute provides a standard of comparison by which we may determine when the premiums, dues, fines, forfeitures, and other charges shall be held to be excessive. Creditors in general are by statute prohibited from contracting for more than eight per cent. interest. Code, section 3038. But building and loan associations are permitted to disguise usury under the more attractive garb of " premiums," " dues," " fines," and " other charges," and to enforce payment thereof so long as the sum total of the exactions shall not be greater than interest at the rate of

twelve per cent. per annum.    Whenever, then, any question arises whether the demand of the association is greater than it is lawfully entitled to recover, we have only to test it by the standard thus provided.    That is, we are to compare the amount which is necessary to discharge the debt on the contract basis of premiums, dues, fines, and other charges with the sum or result which would have been found had the loan been made at " twelve per cent. interest per annum," and all the various contributions to premiums, dues, fines, and other charges had been applied as payments.

The words " interest," " rate," and " per cent. per annum," as applied to compensation for the use of money, have long had a fixed and settled meaning in law, and the rule for computing interest is agreed to with practical unanimity by all courts in all the States, including our own. See *Smith v. Coopers,* 9 Iowa, 387, and the many cases to same effect collected in 29 American Digest, page 230.    By this rule the creditor is always and everywhere required to account for all payments as of the date when they are received, and, if such payments at any time exceed the interest then earned, they operate to reduce the principal debt by the amount of such excess, and in the same proportion reduce the burden of interest thereafter accruing.    If the Legislature had not intended its language to be interpreted in harmony with the accepted rule of law, which accords as well with common and approved usage, surely we should have been given some explicit direction to that effect.    Under the rule adopted by the majority, the association is permitted to swell the standard of comparison by computing interest on the entire amount of the original loan for the entire time from the date of the contract to the date of settlement, and from the sum of these items the aggregate amount of all partial payments, without interest, is then deducted.    In other words, the debtor is thus made to pay not only the given rate of interest on the unpaid balance of principal, but also upon the very money which he has repaid and of which

the creditor is enjoying the use and benefit. Applied to cases like the one at bar, it abolishes the statutory provision that no greater recovery shall be allowed than the sum actually loaned, with interest thereon at a rate not greater than twelve per cent. per annum, and substitutes for such limit another, by which the association may increase the sum of its exactions to the amount which shall be the equivalent of interest at the rate of 15 to 20 per cent. per annum. To illustrate its practical effect, let us suppose that A. owes B. $500, bearing interest at twelve per cent., and he pays each year for four successive years a sum equal to the accrued interest and one-fifth of the principal. If settlement be had at the end of the fifth year, according to the standard rule, it is obvious, without formal statement of the figures, that the utmost sum required of the debtor to cancel his obligation is $112. But applying the rule of the majority opinion, we have an account like this:

| | | |
|---|---:|---:|
| Principal | $500 | 00 |
| Interest (5 years) | 300 | 00 |
| | | |
| Total | $800 | 00 |

Less Payments:

| | | | |
|---|---:|---:|---:|
| First year | $160 | 00 | |
| Second year | 148 | 00 | |
| Third year | 136 | 00 | |
| Fourth year | 124 | 00 | |
| | | | 568 00 |
| | | | |
| Balance due (fifth year) | | | $232. 00 |

By this plan the debtor is compelled to pay $232 to discharge a debt which by the ordinary rule of computation would amount to but $112. Now, by the first method the creditor gets full twelve per cent. interest per annum. There is never an instant when every dollar lent by him and not

returned into his hands is not earning him interest at that rate.   By the second method he received his full twelve per cent. interest as above shown, and a bonus or excess of $120. Stated in terms of " interest," he receives the equivalent of twenty per cent. per annum on his money for the time it was actually out of his possession.   It cannot be reasonably supposed that, in restricting building and loan associations to charges which shall not exceed the equivalent of twelve per cent. per annum, the Legislature had any thought that it was legalizing a scheme for the exaction of twenty per cent.   Assuming, as we must under the former holdings of this court, that the statute which excuses these associations from obedience to the general law against usury is a valid exercise of legislative power, every consideration of justice and public policy required us to construe this extraordinary and exceptional grant or privilege with strictness, and to confine its exercise within the limits prescribed for it.

To a great extent, building and loan associations have ceased to be the simple co-operative enterprises by which laborers and others of limited income co-operate in bringing together their modest savings and making them the instrument or means by which homes are built and the general prosperity advanced, and have become devices by which excessive interest is obtained, with few, if any, counterbalancing advantages.   Says the Supreme Court of Pennsylvania: " It is well known that the design of the Legislature was to encourage the erection of buildings.   The motive for the grant of the franchise was public improvement. · But the practical working of the associations formed under the law has not been what was anticipated.   Though called ' building societies,' they are in truth only agencies by which greater than legal interest is obtained from the necessitous and unwary."   These obvious truths have led the courts quite generally to construe the statutes authorizing the business with strictness, and to apply to their contracts the ordinary rule for computing interest where partial payments are to be con-

sidered, unless some other method is clearly authorized.   *N. A. Building Ass'n v. Sutton,* 35 Pa. 463 (78 Am. Dec. 349); *Kupfert v. B. & L. Ass'n,* 30 Pa. 469; *Mills v. B. & L. Ass'n,* 75 N. C. 292; *Western S. Co. v. Houston,* 38 Or. 377 (65 Pac. Rep. 611); *Strauss v. Carolina B. & L.,* 117 N. C. 308 (23 S. E. Rep. 450; 30 L. R. A. 693; 53 Am. St. Rep. 585).

It would be profitless to go into a minute computation of the payments in this case.   They are made up of numerous small sums paid at monthly intervals covering a period of several years.   Considered on the basis for which I here contend, the association has already received the full equivalent of the original loan with interest at twelve per cent. per annum, and is entitled to no more.

In my opinion, there is no merit in the appeal, and the decree of the district court should be *affirmed.*