W. T. BUTSON, Appellant, v. THE HOME SAVINGS AND TRUST COMPANY, W. H. BREMNER, Trustee, and J. D. WHISENAND, Receiver, Appellees.

**Building and loan associations:** FORECLOSURE: AMOUNT OF RECOVERY.
1   In an action to foreclose a mortgage by a building and loan association as mortgagee, it can only recover the amount, with interest, actually paid to or advanced for the mortgagor, less all payments made as dues, premiums, interest and fines; and voluntary insolvency of the association and foreclosure by a receiver will not alter the rule of the statute.

**Same.** Payments made by a borrowing member of a building and
2   loan association on his stock are not deprived of their character as payments on his loan, because his credit therefor may not be applied on the loan until final settlement and the amount may be affected by the profit or loss on the stocks.

*Appeal from Calhoun District Court.*— HON. Z. A. CHURCH, Judge.

TUESDAY, JANUARY 16, 1906.

ACTION in equity to cancel mortgage given on the property of plaintiff. Cross-petition by defendants to foreclose the same mortgage. Decree of foreclosure as prayed in cross-petition, and plaintiff appeals. *Modified* and *affirmed*.

*Healy Bros. & Kelleher,* for appellant.

*W. H. Bremner, W. A. Graham,* and *Frick & Crandall,* for appellees.

WEAVER, J.— On April 18, 1896, the plaintiff was the owner and holder of five shares of stock in a building and

loan association known as the " Iowa Deposit & Loan Company." Prior to the date named plaintiff had obtained a loan from said association in the sum of $300, to be paid in the usual manner by maturing the aforesaid shares of stock. The payment of the loan was further secured by a mortgage upon the plaintiff's property, and the stock at this time had been so far paid up that it had a withdrawal value of $125.51. At this point dealings between plaintiff and the defendant Home Savings & Trust Company began. This company paid for the plaintiff to the deposit and loan company the sum of $174.49, being the difference between the original loan, $300, and the withdrawal value of plaintiff's stock, $125.51. By this transaction the loan from the deposit and loan company was satisfied and the mortgage was thereupon released. The plaintiff then subscribed for five shares of stock in the Home Savings & Trust Company, and gave to said company his written obligation to it for the sum of $300, and secured the same by a pledge of the said last five shares of stock and by the mortgage now in controversy. In the papers executed between the plaintiffs and defendant the only reference made to the transaction with the deposit and loan company was in the following clause, indorsed upon or attached to the certificate issued to the plaintiff:

In consideration of the transfer of five shares of stock from the Iowa Deposit & Loan Company to the Home Savings & Trust Company, Des Moines, Iowa, when 45 monthly deposits have been made on this stock to the said Home Savings & Trust Company, this certificate shall be treated as matured and the holder thereof shall be entitled to receive its full book value in cash.

While the note and mortgage in question were made and delivered upon the theory that said Home Savings & Trust Company had made to the plaintiff a loan of $300, said defendant did not, in fact (except by way of alleged credit

hereinafter mentioned), lend, pay, or advance to or for plaintiff any other sum or amount than the said item of $174.49, which was required to enable the latter to take up his obligation to the deposit and loan company. Thereafter the plaintiff continued to make monthly payments to the said Home Savings & Trust Company on said five shares of stock, as well as payments of premiums and interest on the basis of a loan of $300, for the period of about 39 months. The aggregate of payments thus made is $249.60, distributed as follows: Stock dues, $117; premiums, $70.20; interest, $58.50; and fines, $3.90. At the end of said period of 39 months the Home Savings & Trust Company went into voluntary liquidation; the defendant W. H. Bremner being appointed trustee to take charge of and wind up the business of the corporation. Thereupon the plaintiff made no further payments upon his said obligation, but later made to said Home Savings & Trust Company and to its said trustee a written offer and tender to pay the additional sum of $100, and demanded a surrender of his note and a cancellation of the mortgage. The tender being refused, plaintiff instituted this action on April 11, 1902, for an accounting concerning the amount due to the said corporation and to enforce cancellation of the mortgage, offering at the same time to pay whatever amount should be found justly due from him. Thereafter, on October 4, 1892, the insolvency of the corporation being apparent, its affairs were placed in the hands of the defendant Whisenand, as receiver, for settlement.

Prior to the appointment of the receiver the corporation and its trustee filed their joint answer herein, averring that the loan to plaintiff was for $300, and that after giving due credit for the withdrawal value of the stock in the deposit and loan company, and for all payments since made, there was still due from plaintiff $174.03, for which sum by way of cross-bill they asked judgment and foreclosure of the mortgage. After the appointment of the receiver he became a party defendant to this action, and filed his separate

answer and cross-bill. His answer repeats in substance the averments made in the answer of his codefendants — admits the payments made, admits the withdrawal value of plaintiff's stock is $296.60, but alleges that by reason of an impairment of the capital plaintiff has become liable to certain assessments amounting to $113.81, and that there is still due upon the debt from plaintiff the sum of $174.03, for which sum he demands foreclosure of the mortgage. Later said receiver amended his answer and cross-petition and increased his claim for recovery upon the note and mortgage to $297.03. Plaintiff's reply to the cross-petition contains substantially a reaverment of the matters contained in his petition. On trial of the issues joined the district court found against the plaintiff, dismissing his bill, and in favor of the defendants upon the cross-bill, assessing the amount of plaintiff's indebtedness at $300.27 and decreeing a foreclosure of the mortgage. From this decree the plaintiff has appealed. The foregoing extended statement of the history of this case is practically undisputed and renders unnecessary any discussion of fact propositions.

I.   We will first inquire as to the legal effect of the original transaction between the plaintiff and the defendant Home Savings & Trust Company. Was it in fact a loan of $300 as contended by the defendant, or a loan of $174.49 as contended by the plaintiff? At that date plaintiff's deposit and loan company stock had a withdrawal value of $125.51. Had plaintiff desired to take up the loan it would have required a withdrawal or surrender of his stock and the payment of $174.49 in cash. Stated in the language of counsel for appellee: "Butson owed the Iowa Deposit & Loan Company $300. His stock in that company was worth $125.51. Therefore, to cancel the loan and his debt to the deposit and loan company, he or some one for him must pay to the company the difference between $300, the debt, and $125.51, the value of the stock. The amount thus required

1. Building and loan associations: foreclosure: amount of recovery.

was $174.49." If this admirably clear statement were applied to a similar transaction between two individuals, one of whom is not a building and loan association, the conclusion that the debtor's obligation to the person who paid this difference for him was exactly $174.49, and no more, would be so clear as to make wholly unnecessary argument in its support. It is insisted by the appellee, however, that, in addition to canceling the plaintiff's debt to the deposit and loan company, the effect of this deal was to make the latter a subscriber to the stock of the Home Savings & Trust Company with an advance payment thereon of $125.51, and a debtor to its loan fund for the sum of $300.

This statement is literally correct from appellee's standpoint, but a little exploration under its surface will demonstrate beyond question the error in the result reached by the trial court. The cross-petition filed by the receiver for the Home Savings & Trust Company serves, in effect, to convert this action into one for the foreclosure of the mortgage, and the law governing such proceedings must be the measure of the rights of the parties for that purpose. The statute provides that, when a building and loan association goes into court and demands recovery upon one of its contracts, " no greater recovery shall be had than the net amount of principal actually received, with interest thereon at the rate of not greater than twelve per cent. per annum on the net amount of the loan actually received by and paid to the borrower with statutory attorney fees; no evasion of this provision shall be had by means of any dues, membership fees, fines, forfeitures or other charges, any agreement to the contrary notwithstanding." Code, section 1898.

The " net amount of the loan " actually received by the plaintiff is therefore an inquiry which must be answered before we can ascertain whether the demand of the company is or is not excessive. It is not pretended that the Home Savings & Trust Company purchased the loan originally held by the deposit and loan company. That debt was paid, can-

celed, and discharged.  It is not claimed that the Home
Savings & Trust Company paid out to the plaintiff or on his
account any other or greater sum than $174.49; but the debt
of $300 is said to have been created by advancing to him or
on his account the said sum of $174.49, and by crediting him
with an advance payment of $125.51 on his stock.  Admit
it, and yet the sum of $174.49 remains the " net amount of
the loan " actually received by the borrower.  The net effect
of it all is simply a scheme or device by which the association
is enabled upon a net loan of $174.49 to collect monthly dues,
premiums, and interest on the basis of a loan of $300.  For
the difference appellant received no value whatever, except
in credit upon stock which was immediately and as a part
of the same transaction assigned back to the association, to
be matured for the payment of the same loan.  This may be
a legitimate " business," if the borrower is willing to sub-
mit to it, but it is manifestly inconsistent with the funda-
mental principles for the promotion of which building and
loan societies were devised.

It will clarify the situation very materially if we keep
in mind that a loan by a building and loan association upon
the pledge of its stock is neither more nor less than an ad-
vance payment of the face or par value of such stock under
an agreement by which the borrower is to proceed to mature
the stock by a series of payments; and by bringing it to
maturity the debt is paid.  This fact or agreement is recog-
nized by the contract in suit.  The note sued upon is by
its express terms a promise to pay to the Home Savings &
Trust Company " the sum of $300 being an advance pay-
ment on my five C shares of its capital stock."  Now, if the
company, upon proper security being given, advances to the
holder of ten shares of its stock the sum of $1,000, and the
holder immediately, and as a part of the same deal, returns
to the company $400 as an advance installment upon the
same stock, or, if, as in the present case, one advancement
is set off against the other, and the company pays over the

difference only, is the net amount actually paid to and. received by the borrower in such case $1,000 or is it but $600? That the smaller sum is the true amount is so apparent that to offer argument in its support is to impeach the intelligence of those to whom it is addressed. To hold otherwise is to permit a building and loan association to make a loan for any named sum, retain 20, 50, 75, or even greater per cent. of that sum as advance stock payments, while the borrower, receiving in fact but a small fraction of the nominal loan, goes on paying monthly premium and interest charged on the full face of the written obligation. If this device is to be upheld, what becomes of the statutory provision which specifically declares that the net amount of the loan actually received by and paid to the borrower shall furnish the basis for computing the amount of recovery, and that the court shall not suffer this rule to be evaded by any system of dues, membership fees, premiums, fines, forfeitures, or charges of any kind?

Without following this discussion any further, we hold that for the purposes of this case the net amount of the loan secured by the mortgage sought to be foreclosed was $174.49, and no more. Taking this as a basis of computation, let us proceed to ascertain the state of the account between the parties under the rule of the statute (Code, section 1898) as applied by us in *Deposit & Loan Co. v. Matthews,* 126 Iowa, 743. In this connection, it should be said it is shown without controversy that plaintiff in apparent good faith sought and offered to pay the balance of his indebtedness prior to March 3, 1902, and before the insolvency of the company was demonstrated, and that on the date named these efforts culminated in a written tender to the trustee in charge of the company's affairs to pay the sum of $100 in discharge of the claim against him. In his petition he again offers to pay whatever amount is due the defendant association. For the purposes of testing the sufficiency of this tender, we will therefore attempt to state the account

as of March 3, 1902, assuming for the present that the contract is one within the protection of the law governing building and loan associations.   If to the net loan, $174.49, we add 12 per cent. interest from April 18, 1896, to March 3, 1902, $143.01, we find an aggregate of $317.50, which marks the statutory limit beyond which the association could not by any device charge the plaintiff in an action upon the loan contract.   Indeed, if we understand the record correctly, the net amount of the loan was reduced to even less than $174.49 by deducting therefrom at least one or two months' dues, premiums, and interest in advance; but, as this is not urged in argument, we do not take it into account. Against the aggregate of allowable charges above mentioned, we have conceded payments as follows:   Monthly dues, $117; monthly premiums, $70.20; monthly interest, $58.50; monthly fines, $3.90 — or a total of $249.60.

It appears, then, that at the time of the tender the utmost sum for which the association could enforce recovery in any event was the difference between these aggregates, or $67.90.   But it is suggested that the company being now insolvent and in the hands of the receiver, a different rule is to be applied, and in support of this proposition we are cited to *Spinney v. Chapman,* 121 Iowa, 38, *Spinney v. Miller,* 114 Iowa, 210, and *Hale v. Kline,* 113 Iowa, 523. We find nothing in these or other authorities relied upon by appellees with which this opinion is out of harmony. This is not a proceeding to which the association and all its individual members have been made parties for an adjustment of their mutual equities, and we do not undertake to say what rules might obtain under such circumstances, but we may with propriety suggest that it would be a peculiar quality of equity which would permit a party to increase the amount of his debtor's obligation by declaring his own insolvency.   On the contrary, it is well settled that a receiver or assignee in insolvency proceedings takes the debtor's estate subject to all the outstanding rights and equities which

attached to it in the hands of the debtor himself. *Stewart v. Platt,* 101 U. S. 731 (25 L. Ed. 816) ; *Warner v. Jameson,* 52 Iowa, 70; *Roberts v. Corbin,* 26 Iowa, 316.

It has often been held that where a building and loan association by reason of insolvency or otherwise ceases business, having unpaid stock and loans outstanding, borrowers are released from payments of monthly installments, and the contract will be treated as an ordinary loan at legal interest upon which the payments already made will be credited under the accepted rule governing partial payments. This rule is made subject to some modification in certain jurisdictions, but in some the borrower is held to a literal performance of his contract after the association becomes insolvent. *Low St. B. A. v. Zucker,* 48 Md. 448; *Cook v. Kent,* 105 Mass. 246; *City B. & L. A. v. Goodman,* 48 Ga. 445.

This rule is applied simply because by the act or default of the association the maturity of the stock becomes impossible and the whole plan or scheme on which the loan was taken out is made to fail. The rule is intended to relieve, not to increase, the burden of the borrower, and, if under any possible contingency the rule would operate to make a debtor liable for a greater amount than he would have to pay to discharge his debt according to the literal terms of the contract no court would apply it. When plaintiff offered to take up the loan and tendered payment of all the association could have enforced against him had judgment then been rendered, his right to have the obligation surrendered and the mortgage canceled was from that moment fixed. Strictly speaking, the lien of the mortgage then ceased to exist, and no act or default of the association, thereafter occurring, could have the effect to restore said lien or deprive the plaintiff of his right to a release of record. None of the cases relied upon by the appellee undertake to hold that in a foreclosure of a building and loan mortgage by a receiver the debtor is not entitled to the benefit of the rule established by Code, section 1898. The statute itself pro-

vides for no exceptions to its operation, nor is there any hint or suggestion in any of its parts from which such an exception can be implied. Its language is general: " In the event that judgment is obtained against a borrower from a building and loan association, no greater recovery shall be had than the net amount of the principal actually received with interest," etc. Were we to say that this provision is not applicable to the case before us, it would amount to a practical nullification of the act in a very essential particular. There is an attempt to charge the plaintiff with certain alleged assessments made upon his stock for the payment of losses incurred in the business of the corporation. Issue is taken upon this claim in the pleadings, and, as it does not seem to be supported by any competent or sufficient evidence in the record, we do not therefore consider whether in any event the plaintiff could be held upon such assessments.

II.   Other questions are argued by counsel, but as those already considered are decisive of this appeal we shall not discuss them. The equities of the case are strongly with the plaintiff. It is putting it very mildly to say that the claim asserted by the defendant association and enforced by the decree below is oppressive to the last degree, and requires some better reason than has been suggested in argument to command our approval.

. The plaintiff received from the defendant corporation a loan or advancement of $174.49, less advance charges. Within a little more than three years from that date he had paid on this loan and to mature the stock by which his obligation was to be discharged the sum of $249.60, when the corporation went into voluntary liquidation, thereby declaring its inability or unwillingness to perform its part of the contract. According to its own computation and on a basis of a loan of $300, the utmost amount of its claim on September 24, 1901, was $99.23. On April 26, 1902, the answer filed by the trustee in this case increased that demand to $174.03. On February 11, 1904, the receiver comes into

the action and again increases the demand to $297.03, and the court enter a decree against him in the sum of $300.27; and that, too, while the association and its receiver expressly admit that the plaintiff's stock at the date of the decree had a withdrawal value of $296.60. The amount of this judgment, if the plaintiff must pay it, added to the $249.60 already paid, makes a total of $549.87. In other words, he will pay $375.38 for the use of $174.49, although the return payments began immediately and amounted to more than the principal sum within less than two and a half years from the date of the loan. The mythical story of Sisyphus, condemned forever to roll a heavy stone up the mountain side, only to have it escape his grasp and fall deeper than ever into the valley below, must have been inspired by some prophets' vision of a twentieth-century borrower endeavoring to pay a loan upon terms like these. We feel confident that the appellee's claim is justified neither by its contract nor by the statute under which such associations do business.

We do not overlook the argument by which payments made upon stock are sought to be distinguished from payments upon the loan. That distinction is largely a play upon terms — merely a matter of bookkeeping. For, if both parties carry out the contract according to its stipulation, the debt is paid, as we have already repeatedly suggested, solely and only by bringing the stock to maturity. Every payment, therefore, which goes to advance or accelerate the maturing process, is of necessity a payment in some degree or measure on the debt, nor are such payments deprived of their true character as such by the fact that credit therefor may not be applied upon the note representing the loan until the time arrives for final settlement, and may then be increased by profits or decreased by losses which have accrued upon the stock.

2. Same.

The decree appealed from is therefore modified by reducing the amount found against the plaintiff to $67.90, and by taxing the costs of both courts to the receiver.

*Modified* and *affirmed*.