IN RE TRUSTEESHIP FOR HOLDERS OF DEBENTURES ISSUED BY WASHINGTON LOAN & TRUST COMPANY.

J. M. BRATTEN et al., Appellants, v. L. A. ANDREW, Receiver, et al., Appellees.

No. 41414.

MARCH 8, 1932.

REHEARING DENIED JUNE 24, 1932.

T. L. Brookhart and E. C. Eicher, for appellants.

John Fletcher, Attorney-general, and Wilson & Wilson, for L. A. Andrew, appellee.

Edmund D. Morrison, for George W. Griffith, Intervener, appellee.

STEVENS, J.—The Washington Loan & Trust Company, organized and incorporated under the laws of this state for the purpose of engaging in the business of issuing and selling mortgage bonds, debentures and other forms of obligations secured by real estate first mortgages and other securities, on or about October 5th, 1931, became insolvent, and the superintendent of banking was appointed receiver by the district court of Washington county to take charge of its assets and affairs.

The controversy now before us is twofold in character and, on the one hand, is between the appellant trustees and the appellee receiver, and, on the other, between said trustees and George W. Griffith, executor, intervener and cross-appellant, and the receiver. The issues and propositions presented for review and decision will be more readily understood if the statement thereof is preceded by a somewhat extended recital of the material facts which are stipulated by the parties or established without dispute in the evidence.

For the purpose of conforming the plan and method of doing business to the by-laws of the company which provide "Mortgage bonds or debentures, to be secured by an actual transfer of real estate securities for the benefit and protection of purchasers, such securities to be at least equal in amount to the par value of such bonds or debentures and to be first liens upon real estate; worth at least twice the amount loaned thereon, may be issued by the Company and under its seal. The said mortgage bonds or debentures shall be certified by trustees to whom such mortgage securities are transferred,"—and to the articles of incorporation and the laws of this state, a trust agreement was on August 1st, 1912, entered into between the company and three parties designated as trustees. The material portions of this agreement are as follows:

"That the company does hereby constitute and áppoint said D. A. Boyer, W. A. Cook and J. M. Bratten as Trustees, for the benefit and protection of all purchasers and holders of the mortgage bonds or debentures issued or to be issued by said Company, to receive, hold and administer all real estate mortgages, liens and other securities which will hereafter be transferred to said Trustees by said Company for such purposes, and as herein provided. * * *

"That the said mortgage bonds or debentures shall contain or have indorsed thereon a certificate to be made and signed by said Trustees or their successors, reciting in substance that at date of certificate they hold for the benefit and protection of the owners and holders of said bonds and all other bonds issued by said Company and bearing their certificate, real estate securities which are first liens upon real estate valued at not less than twice the par value of such securities, and that the securities so

held are at least equal in amount to the entire sum of bonds by them certified and then outstanding; and such securities shall be transferred to said Trustees and their certificate indorsed upon said bonds before any of the same are issued or sold hereunder.

"That whenever the Company shall produce and surrender to said Trustees for cancellation of their certificate, any certified mortgage bond or debenture, said Trustees upon request of said . Company shall return to it a proportionate share of the securities by them held in trust, whereupon the bond or debenture and certificate so surrendered shall be cancelled.

"That said Company shall be entitled to receive all interest or income upon securities transferred to said Trustees during such time as the interest on its bonds and debentures so certified shall be by said Company promptly and fully paid, but upon default made by said Company in the payment of its interest, continuing for thirty days, or if it make default in the payment of principal of said bonds or any of them, when due, then upon notice being given to them by the persons entitled to said payments in default, said Trustees shall collect all interest and income upon the securities held by them and shall at once proceed to collect or sell the securities transferred to them, or so much thereof as may be necessary, and apply the proceeds of such collections or sales in payment of said defaulted interest or principal of said bond or bonds. Therein said Trustees are hereby authorized in their own names, as Trustees, to do any and all things necessary in the collection or transfer of any of said securities including the bringing of suit or action thereon or any proceedings in court connected therewith, and the employment of agents and attorneys therein, and the making of any necessary indorsements, transfers, or instruments of conveyance connected therewith or required thereby. * * *

"That said Company may at any time withdraw any of the securities pledged or transferred upon substituting for them and transferring in trust, other securities of equal or greater value. The said Trustees shall safely keep and preserve all securities transferred to them in safe deposit boxes or value in Washington, Iowa."

Two forms of mortgage bonds or debentures were issued

and sold by the company. These bonds were designated as "Series A" and "Series C." As it becomes material to our discussion, the character, and the distinction between, the respective series will be definitely pointed out.

I. We will first dispose of the controversy between the trustees and the receiver. Following the appointment of the state superintendent of banking as receiver, the trustees voluntarily appeared in the district court with an application, in which, among other specific relief, they prayed that the court direct them in the administration of the securities in their possession, and that the receiver be required to appear and answer the application. Issues were thus joined upon the application and a hearing had. The issue tried and decided by the court was limited to the question as to who should liquidate the securities in the custody of the trustees. The receiver asked that they be immediately surrendered by the trustees to him to be administered in the receivership. The trustees prayed the court that they be permitted to retain and collect the same for the benefit of the bondholders. The court found in favor of the receiver and directed the trustees to deliver all of the securities and assets of the corporation in their possession to the receiver. From this order the trustees have appealed. On this issue, the intervener joined with the receiver.

Series A bonds, with which we are at present concerned, recited that the payment thereof is secured by the actual transfer of real estate securities which are first liens upon real estate worth at least the par value of the securities, and that the same are held by the trustees whose certificate was attached to each bond for the benefit of the holder thereof.

There were at the time the company became insolvent outstanding mortgage bonds of Series A in the principal sum of $431,780, and on the same date, first real estate mortgages in the principal sum of $431,482.06 were held by and in the custody of the trustees as security therefor. It is, of course, conceded by all parties that the bonds are liabilities and the securities assets of the trust company. It was stipulated upon the trial that the value of the securities held by the trustees is less than the aggregate amount of Series A bonds outstanding. It is also conceded by the receiver that all sums realized on the securities in controversy must be applied to the payment of bonds until

they have all been paid in full. It is manifest, therefore, that nothing will ever be available from this source for the payment of depositors or general unsecured creditors of the company. A careful reading of the portion of the by-laws of the company quoted above, the trust agreement and the provisions of the bonds will clearly show that the parties contemplated the transfer of the title to all of the securities to the trustees for the benefit of the holders of bonds. None of the securities were endorsed by the company, or, in terms, assigned to the trustees. They were kept by the trustees in the vault of the trust company but were accessible only to the trustee.

The principal point urged by the receiver is that the title to the securities did not pass to the trustees and that they held the same as agents only and that, upon the principal's becoming insolvent, the agency terminated. The contention as to the fact of an agency, it seems to us, is unsound. The trust agreement is binding upon both the trust company and the trustees. It would seem to be obvious that the trust company could at no time, while a going concern, have compelled the trustees to surrender to it securities in their possession upon any other terms than those provided for in the trust agreement. Securities could be withdrawn only by the substitution of others of equal value. The intent on the part of the company to in good faith and for the purpose of complying with its articles of incorporation, its by-laws and the laws of this state transfer such title to the trustees as was essential to the carrying out of the terms of the trust agreement would seem to be clear. Surely, the trustees and purchasers and holders of the bonds so understood the matter. Authorities on the point are not numerous, but the law appears to be well settled that a court of equity may not terminate or violate a trust agreement under which trustees have come into possession of securities of a trust company to be held by them for the benefit of bondholders, but is bound to observe and give full force and effect to the terms of such agreement. Brackett v. Middlesex Banking Co., 95 Atl. (Conn.) 12; Greenebaum v. General Forbes Hotel Co., 38 Fed. (2d Ser.) 96.

The receiver does not dispute the foregoing legal proposition, but, as stated above, takes the position that the failure of the company to vest an absolute title to the securities in the trustee is fatal to their contention. It is true that the securities

were not transferred by endorsement or assignment. They were, however, delivered to the trustees. No one contends that the right of the receiver to the possession of the securities is any higher or greater than that of the corporation prior to its insolvency. The doctrine of agency relied upon by the receiver, if applied to the facts of this case, would at best serve only to transfer the liquidation of the securities from the trustees to the receiver. It is urged that if this were done, the closing up of the affairs of the company would be more economically accomplished than if the securities are left in the custody of the trustees. This is probably true, but we are confronted with the trust agreement and the whole course of conduct and dealing by the trust company, which the court is without power to terminate or ignore. The bondholders are not parties to this proceeding and their wishes are unknown. They have a right to have their obligations paid, so far as they are available for that purpose, out of the securities held by the trustees for the benefit thereof. The trust agreement in express terms authorizes the trustees to collect the interest and income upon the securities held by them and to prosecute actions in their own name for the collection thereof. Matters of expediency and economy must yield to the solemn binding agreement and undertaking of the parties. Whether the title of the trustees to the securities is absolute or qualified, it is for the purpose of carrying out the agreement and obligations of the company and is obviously sufficient therefor. On this branch of the case, we conclude that the order of the court directing the trustees to surrender the securities in their possession to the receiver cannot be sustained.

II. Some time after the trust company began doing business, a department known as the Home-Builders Loan Department was created, and Series C bonds, which were promises to pay a fixed sum with interest to the holder thereof, were issued and sold.

At the time of the appointment of the receiver, there were bonds of this series outstanding in the principal sum of $55,-461.70. In addition thereto, the Home-Builders Loan Department had received deposits in the sum of $235,013.47, which were obligations of the company. There were at the same time, in the hands of the trustees, securities for Series C bonds and deposits first farm mortgages aggregating $384,310.64.

In the application filed by the trustees, it is alleged that on or about December 31, 1930, J. P. Wood and wife borrowed $1500.00 of the Home-Builders Loan Department, giving their note therefor and securing the payment thereof by a mortgage upon real estate. Monthly payments were made to the company on this loan and in addition thereto one payment of $800.00 was made. The makers of the note claimed that the balance due thereon was $591.33, which sum was tendered to the trustees and later by answer in this proceeding. The trustees prayed the direction and authority of the court in the matter.

At this juncture, George W. Griffith, executor of the estate of Ella M. Griffith, appeared and filed a cross-petition alleging that his decedent was the owner and holder of a Series A bond which was wholly unpaid, and denied the right of the makers of the $1500 note to have any sum credited on their note or offset against such obligation. The note was in the ordinary form of a promissory note and provided for interest at the rate of 7.8%. Attached thereto was a monthly payment agreement signed by such makers in which they agreed to pay into an account of the Home-Builders Loan Department $18.75 on the first day of each month until 120 such payments were made. The agreement further recited that "the said account, together with the dividends apportioned thereto by the trust company shall be applied to the payment of principal and interest of the foregoing note and shall constitute full payment thereof. Such application shall be made at maturity of the note or at such time prior to maturity as the trust company, its successors or assigns may determine." The monthly payments which were made by the makers of the note were credited in a small book, in the front part of which there is a printed contract, followed, in the rear, by a copy of the rules of the Home-Builders Loan Department. The printed contract recited that in consideration of the benefit to an investor in such department, he agreed to pay on the first day of each month a stipulated sum into a debenture account in accordance with the rules of the trust company covering such accounts. This is the account referred to in the monthly payment agreement.

At the conclusion of the trial, upon the issues joined in the petition of intervention, the court found that the amount tendered by the makers of the note was the balance due, and there-

fore, directed the receiver to accept the tender and to release the mortgage. The intervener has appealed from this finding and order of the court.

We are not now concerned with the intricacies of the debenture account, nor are we required to determine the controversy between the trustees and intervener, if any, as to proper credit to be made on the note. The sole question here presented is whether credit for any sum shall be allowed upon the note.

It is the theory of cross-appellant that the borrower must await the liquidation of the assets in the hands of the trustees, or the receiver if turned over to him, and to receive such portion as may be found to be due him from the debenture account. The contention, it seems to us, cannot be sustained. The makers of the note clearly never intended to become investors for any other purpose than the payment of their obligation. The monthly payment agreement provided in specific terms that the payments made would be applied to the discharge of the note. The rules of the department provided that "all loans with monthly payment agreements may be paid before maturity on January 1st or July 1st in any year on thirty days' written notice. In the case of such pre-payment, the borrower shall be charged with interest to date of payment and shall receive credit for the withdrawal value of his account" as provided in another paragraph of the rules. Woods, therefore, are entitled to have their contract and agreement carried out according to their terms and the intention of the parties. As stated above, the court does not undertake to compute the sum which, under the evidence, shall be credited upon the note. That question is not before us. Our holding, therefore, is limited to one proposition, namely, shall any sum be credited on such note? On this proposition, we agree with the district court. Any other conclusion would do violence to the contracts and intention of the parties. On this proposition, see Butson v. Savings & Trust Co., 129 Iowa 370.

It follows that the order of the court directing the trustees to surrender the securities in their possession to the receiver is reversed and the order directing that certain designated sums

be credited on the $1500 note and the tender of the balance due be accepted is affirmed.—Affirmed in part; reversed in part.

All justices concur.